740 P.2d 57

**ETCHEVERRY SHEEP COMPANY, an Idaho corporation, Plaintiff-Respondent/Cross-Appellant,**

v.

**J.R. SIMPLOT COMPANY, a Nevada corporation, and Verlo B. Wickel, Defendants-Appellants/Cross-Respondents.**

No. 16502.

Supreme Court of Idaho.

July 1, 1987.

James F. Kile, Boise, for defendants-appellants/cross-respondents.

Donald J. Chisholm, of Chisholm & Bradley, Burley, for plaintiff-respondent/cross-appellant.

BISTLINE, Justice.

### History

A dump truck and trailer operated by Verlo Wickel, an employee of Simplot, headed south on a county road outside of the city of Rupert. At about 3:00 p.m. approached a crest in the road. On the other side, Emilio Puchi, an employee of Etcheverry Sheep Company, was leading a band of approximately 1600 sheep north up the hill. Wickel first saw the band of sheep when the truck and trailer topped the hill. The truck piled into the livestock, traveling about 150 feet from the point where it first ran over the sheep. One hundred twenty-three sheep were killed or fatally mutilated.

Etcheverry filed suit to recover for his loss. After the complaint was filed, Simplot moved for partial summary judgment, alleging Etcheverry was negligent as a matter of law for having its sheep upon the public highways within a herd district. The court granted the motion, but Etcheverry moved for reconsideration, contending that the sheep were not being "herded" upon the highway, but instead were being "trailed" or "driven" by the men in charge of the move. The magistrate court reversed itself and vacated the partial summary judgment.[1]

At trial, Simplot attempted to enter into evidence a certified copy of the minutes of the Minidoka County Commissioners which created the herd district involved in the case. Simplot argued that the sheep were being herded upon the highway in violation of the herd district law; Etcheverry argued to the contrary, that the livestock were being trailed. The magistrate, in denying

admission of the offered exhibit, ruled that the herd district law had no relevance. Judgment for the plaintiff was entered on a jury verdict which found Simplot 95 percent negligent and Etcheverry 5 percent negligent.

Simplot appealed this ruling first to the district court and then to this Court. On appeal, Simplot argues only that the magistrate erred in excluding evidence of the existence of the herd district.

### I

Simplot's position is that the herd district evidence is essential to establish the plaintiffs' negligence, i.e., that the livestock were being allowed to graze upon a public highway within a herd district; therefore, Etcheverry is negligent per se. To support this argument, Simplot alleges that the terms "herding" and "trailing" are synonymous, but if not synonymous, then that the livestock at the scene of the collision were being herded.

■ Of like mind with the courts below, we cannot agree with either of these contentions. The terms "herding" and "trailing" are distinguishable and the distinction was drawn years ago. In the case of *Phipps v. Grover*, 9 Idaho 415, 75 P. 64 (1904), the Court resolved a dispute concerning the now repealed "2–mile limit law" statute. Under this statute it was unlawful to herd sheep on the land of another or within two miles of another's house. The *Phipps* Court was confronted with deciding whether the two-mile limit law prohibited the driving of sheep within the proscribed distance. The Court concluded it did not, stating:

> The legislature in making it unlawful to "herd" sheep or permit them to "graze"

---

1. Prior to the trial of the case the Idaho legislature amended I.C. § 25–2402 (Cum.Supp.1986) by adding subsection (2)(c) to herd districting laws:

    (2) Notwithstanding any other provision of law to the contrary, no herd district established before or after July 1, 1983, shall:

    . . . .

    (c) Prohibit trailing or driving of livestock from one location to another on public roads or recognized livestock trails.

    The legislature gave a statement of purpose: This proposed amendment to I.C. § 25–2402, relating to herd districts, clarifies the wording in the Code regarding the legality of livestock being trailed or driven through a herd district to open range. Statement of Purpose, RS 11476.

within two miles of the dwelling-house of the settler never meant to include in those terms the mere driving of sheep through the country, or from one feeding or grazing place to another. If they had meant such a thing their acts would have been futile and in violation of both the state and federal constitutions as well as the acts of Congress. We must construe this enactment in the light of the objects the legislature had in view. We assume that those objects were lawful, and therefore *conclude that driving stock from one range to another is not "herding" them, nor is the occasional eating of grass, as they go or while stopping for needed rest, "grazing"* as contemplated by the lawmakers when enacting the foregoing statute. *Id.* at 417–18, 75 P. at 65 (emphasis added).

The reasoning of the *Phipps* Court is squarely applicable to the trial court's ruling on I.C. § 25–2402, and the lower courts properly applied it. Etcheverry's livestock were being relocated under a controlled movement. The record demonstrates, and both parties agree, that the sheep were in a shoulder-to-shoulder, close formation under the direction of several drivers.

█ The purpose of the herd district statutes was to provide an alternative to landowners who wished to protect their land from damage caused by roaming stock but did not desire, or were unable, to afford to fence out stray cattle. A herd district ordinance requires fencing in. *Benewah County Cattleman's Association, Inc. v. Board of County Commissioners of Benewah County*, 105 Idaho 209, 668 P.2d 85 (1983); *Maguire v. Yanke*, 99 Idaho 829, 590 P.2d 85 (1979). Clearly, that movement of the Etcheverry livestock was not within the purpose of the herd district statutes, but was instead the well-recognized method of relocation by trailing or driving. As the appellate district court noted in its opinion:

Etcheverry established that the practice of trailing in Minidoka County has never been considered as inconsistent with the herd district law or as "running at large and being herded upon the public highways" as prohibited by the Mini-

doka County Commissioners by their order contained in trial Exhibit N. R., p. 28.

█ Simplot also contends that Etcheverry was prohibited from having its sheep on the highway. It relies upon I.C. § 40–2313 (1985), which reads in part:

(1) County or highway commissioners are authorized to lay out highways or designate existing highways, within their respective jurisdictions, to be used as trails for livestock.... A regular highway not established or designated as a livestock trail under the provisions of this section may be used for trailing livestock in a number and at a time as may be indicated in rules and regulation made for that purpose by the respective commissioners.

(2) ... When highways are provided by counties or districts and are available for use as livestock trails, the respective commissioners may by rule or regulation prohibit the use of any regular highway, or portion of it, in their respective jurisdictions, for trails over which to drive livestock.

Simplot urges that the absence of any such designation, as was true in Minidoka County, implies a prohibition against using the highways as trailing routes.

This argument goes against the reading of the statute. Concededly, the Minidoka Board of County Commissioners has not designated any highways as trailing routes; nor has it passed any regulations barring the trailing of livestock on any highways. We agree with the district court's view on the appeal to it:

Rather than imply that nondesignated highways may only be used if there are rules and regulations containing restrictions as to number and time, it is more natural to understand that sentence as providing that regular and nondesignated highways may be used, and if restrictions are placed as to time and number then those restrictions must be observed. District Court Opinion, R., p. 32.

The trial court committed no error when it denied admission of the requested herd district evidence. Simplot's offer of proof

attempted to demonstrate the existence of the herd district in effect at the scene of the collision, it did not give any support for a conclusion that Etcheverry's livestock were being herded or allowed to run at large rather than being trailed or driven.

■ Simplot further alleges the trial court was in error by refusing to give a requested jury instruction which would have provided dictionary definitions which equated "herding, driving and trailing" as synonymous with controlled movement of livestock from one place to another. The trial court was not in error when it refused to give the proposed instruction. While the definitions offered might be said to generally aver the movement of livestock, the instruction would fail to aid the jury in determining the type of movement here involved, and, as the district court observed, could well have been created of confusion in the minds of some of the jurors.

## II

The trial court awarded attorney's fees to Etcheverry under I.R.C.P. 54(e)(1). The court based its assessment in part on the ruling of *Sigdestad v. Gold,* 106 Idaho 693, 682 P.2d 646 (Ct.App.1984), *review denied.* The Court of Appeals necessarily had to address this Court's holding in *Payne v. Foley,* 102 Idaho 760, 639 P.2d 1126 (1982). In that case we noted that plaintiff's pretrial request of the defendant for advice as to the possibility of settlement was not responded to until the second day of trial. The Court of Appeals distinguished as follows:

> In *Payne* a district court had awarded attorney fees under I.C. § 12–121 and I.R.C.P. 54(e)(1) by reason of the defendant's failure to enter into good faith settlement negotiations with the plaintiffs. The Supreme Court reversed, giving three reasons for its decision. First, the court said that the parties had cited no legal authority allowing award of attorney fees for failure to negotiate in good faith. However, the court carefully refrained from saying that settlement negotiations never could be considered in

evaluating an attorney fee question. Second, the court noted that even if attorney fees could be awarded for failure to negotiate, such an award would be inappropriate in that case because the failure was the fault of both sides. Finally, the court stated that there were genuine issues of joint liability and damages, making it reasonable for the defendant to take the case to trial. The Supreme Court did not indicate which of these three reasons actually controlled the result on appeal.

> Shortly after *Payne,* our court considered a similar question in *Bosshardt v. Taylor,* 104 Idaho 660, 662 P.2d 241 (Ct.App.1983). There a district court awarded attorney fees upon a stated desire to make a prevailing plaintiff "whole." The court also observed that no meaningful settlement negotiations had been conducted by the parties. However, the judge expressly refused to find that the case had been defended frivolously, unreasonably or without foundation. Reversing the attorney fee award, we held:

>> [O]ne party's failure to negotiate does not, *by itself,* establish the opposing party's right to attorney fees under I.C. § 12–121. An award of fees must be supported by a finding that one or more of the criteria prescribed by Rule 54(e)(1) have been satisfied. [Emphasis added.]

> *Id.* at 661, 662 P.2d at 242.

> We believe a clear set of rules may be discerned from our reading of *Payne* and our holding in *Bosshardt.* The first, and overriding, rule is that a trial court must support an attorney fee award by finding that one or more of the criteria prescribed by Rule 54(e)(1) have been satisfied. *A mere finding that the nonprevailing party failed to negotiate in good faith is not, by itself, sufficient. Second, a district court is not precluded from considering pretrial settlement negotiations in determining whether the criteria of Rule 54(e)(1) have been established.* The court may evaluate such negotiations in light of the underlying merits of a claim or defense, in order

to determine whether the case was brought, pursued or defended frivolously, unreasonably or without foundation. The third rule is that one party's failure to negotiate in good faith is not a factor to be considered, in determining whether the criteria of Rule 54(e)(1) have been satisfied, if there has been a similar failure by the opposing party. The consequences of a mutual failure to negotiate in good faith may not be visited solely upon the nonprevailing party. *Sigdestad, supra*, 106 Idaho at 695, 682 P.2d at 648 (emphasis added).

Pretrial negotiations indicated that Simplot had the opportunity to settle the case for $6,500. Simplot's highest offer was $1,500. The jury ultimately awarded Etcheverry nearly $9,000. The trial court concluded that Simplot failed to negotiate in good faith prior to trial, and was careful to explain its ruling.

Addressing the merits of Simplot's defense, the trial court observed that evidence submitted at trial showed that the truck should have been able to stop in less than 200 feet, and that the truck not only failed to stop within the 600 feet available before striking the sheep, but additionally traveled at least 150 feet into the sheep before stopping. Simplot made no attempt to rebut this, and the plain inference to be drawn is that the driver of the truck was either exceeding the "frost law" speed limit of 35 mph then imposed by the county, or was inattentive. Even if the Etcheverry sheep had been unlawfully on the roadway, the duty of every driver is to avoid hitting plainly visible objects. *Garrett v. Bannock Paving Co., Inc.*, 112 Idaho 722, 735 P.2d 1033 (1987). From this the trial court concluded Simplot unreasonably and frivolously defended the action.

The district court upheld the trial court's award of attorney's fees: "It appears that the appellants, knowing that they had no evidence that the sheep were being herded rather than trailed, proceeded to trial in which the jury and the trial judge concluded that it was 95 percent negligent in causing the damages to the Etcheverry sheep." (Dist.Ct.Op.R., p. 34.) The district court

agreed that Simplot frivolously defended its action, but refused to award attorney's fees on the appeal taken to it.

Under § 12–121 and I.R.C.P. 54(e)(1), the trial court has discretion to award attorney's fees. This discretion will not be overturned absent a showing of abuse. The trial court did not abuse its discretion by awarding fees to Etcheverry. Simplot's main defense was the applicability of the herd district law. But, it was then as clear as now that a controlled movement of livestock within a herd district is not prohibited. Simplot had no evidence to counter this, and could only argue that the livestock were being "herded" and not "trailed."

"A district court reviewing an appeal from a magistrate court, not involving a trial de novo, should determine the question of attorney fees on appeal, employing the same standards as we apply in awarding attorney fees on appeal to the Supreme Court." *Nicholls v. Blaser*, 102 Idaho 559, 562, 633 P.2d 1137, 1140 (1981). The trial court's conclusion that Simplot frivolously and unreasonably defended was amply supported; Simplot's case was no less frivolous or unreasonable on appeal than at trial. On appeal, under I.C. § 12–121, "attorney fees are awardable if an appeal does no more than simply invite an appellate court to second-guess the trial court." *Booth v. Weiser Irrigation Dist.*, 112 Idaho 684, 735 P.2d 995 (1987). The herd district evidence argument presented no new legal standards or issues which could modify existing legal standards. *See Scott v. Castle*, 104 Idaho 719, 662 P.2d 1163 (Ct.App.1983). The trial court's decision that the herd district evidence was irrelevant was correct, irrespective of the legislature's clarification of I.C. § 25–2402 to make it clear that trailing and driving were not prohibited within a herd district.

Having met the requirements for awarding attorney fees on appeal, the appellate district court should have granted attorney fees. *See Minich v. Gem State Developers, Inc.*, 99 Idaho 911, 591 P.2d 1078 (1979); and *T–Craft Arrow Club, Inc. v.*

*Blough,* 102 Idaho 833, 642 P.2d 70 (Ct. App.1982).

### Conclusion

The judgment of the district court affirming the magistrate's judgment for Etcheverry and awarding attorney's fees at the trial court level is affirmed.

Costs to Etcheverry. No attorney's fees on either appeal.

SHEPARD, C.J., and HUNTLEY and BISTLINE, JJ., concur in parts I and II.

SHEPARD, C.J., and DONALDSON and BAKES, JJ., vote to affirm the district court's denial of attorney's fees on appeal and deny attorney's fees in this Court.

BISTLINE and HUNTLEY, JJ., vote to reverse the district court's denial of attorney's fees on appeal with instructions to be reconsidered on remand and would award costs of appeal including attorney's fees in this Court to respondent.

BAKES, Justice concurring in part and dissenting in part:

### I

I concur in the result of Part I of Bistline, J.'s, opinion affirming the trial court's rejection of Simplot's offered exhibit, the certified copy of the minutes of the Minidoka County commissioners creating the herd district in the area where the accident occurred. Ordinarily, whether cattle or sheep are being "herded" rather than "trailed," as those terms are defined in our early case of *Phipps v. Grover,* 9 Idaho 415, 75 P. 64 (1904), would be a question of fact for the jury. In the trial of such an issue, evidence of the creation of a herd district at the area of the accident would be relevant and admissible. However, in this case, the appellant Simplot was not asserting that a triable issue of fact existed regarding whether the sheep were being "herded" rather than "trailed"; rather, Simplot was arguing that there was no distinction between those terms and, there-

fore, the trial court erred in not instructing the jury that the plaintiff Etcheverry was negligent as a matter of law for violation of the herd district law. I agree with the Court's conclusion that the trial court did not err in concluding that the offered evidence, a certified copy of the herd district resolution, did not establish as a matter of law that Etcheverry was negligent *per se.* There being no factual issue over whether the sheep were being herded rather than trailed, the trial court did not commit reversible error in rejecting the proffered exhibit. Accordingly, I concur in the result of Part I of Justice Bistline's opinion.

### II

However, I cannot agree that the case was defended frivolously, unreasonably or without foundation, within the meaning of I.R.C.P. 54(e)(1), in the magistrate court. Accordingly, I would reverse the magistrate court's award of attorney fees.

Aside from appellant's argument at trial that respondent Etcheverry had violated the herd district ordinance and was therefore negligent *per se,* the appellant Simplot also asserted the defense at trial that the respondent Etcheverry was also negligent because his herd of sheep totally obstructed the road near the crest of a hill, and he knew that oncoming traffic could not see the obstruction. Simplot asserted that Etcheverry was negligent in failing to post a flagman or a warning vehicle in front of the herd to warn oncoming traffic approaching from the other side of the hill that his band of sheep had entirely blocked the highway. Based upon the evidence, the jury could well have concluded that the respondent Etcheverry was equally, or perhaps more negligent than the driver of the Simplot vehicle, and thus entitled to no damages. Simplot did not act frivolously, unreasonably or without foundation in asserting its right to a jury trial on that factual issue, and accordingly, the magistrate court erred in granting attorney fees under I.R.C.P. 54(e)(1).

Furthermore, it is apparent that the court's motivation in awarding attorney fees was the failure of the appellant Sim-

plot to enter into meaningful settlement negotiations. However, that is not one of the considerations authorized by I.R.C.P. 54(e)(1) for the granting of attorney fees, as this Court held in *Payne v. Foley*, 102 Idaho 760, 639 P.2d 1126 (1982). As Justice Bistline stated in his special concurring opinion in *Payne v. Foley*, *supra* at 763, 639 P.2d 1126, "[T]he language of the Court's opinion [in *Payne v. Foley*] ... in effect holds that there is no authority in a trial court to insist upon, oversee, or second-guess settlement negotiations, if any, and certainly no authority to impose sanctions for 'bad faith' bargaining."

Accordingly, for both reasons, the magistrate court's award of attorney fees to Etcheverry was erroneous and should be reversed.

DONALDSON, J., concurs.