797 P.2d 81

**James and Tamala HETTWER,
Plaintiffs–Appellants,**

v.

**FARMERS INSURANCE COMPANY
OF IDAHO, dba Farmers Insurance
Group, Defendant–Respondent.**

No. 17831.

Supreme Court of Idaho.

May 22, 1990.

Dissent on Denial of Rehearing
Sept. 25, 1990.

Child & Fisher, Coeur d'Alene, for plaintiffs-appellants. Jeffrey A. Child argued.

Knowlton, Miles & Merica, Lewiston, for defendant-respondent. Kent J. Merica argued.

JOHNSON, Justice.

This case was styled as a bad faith insurance case.

Mr. Hettwer was injured when an automobile he was driving was involved in an accident with an automobile driven by Kara K. Hermstead. The Hettwers sued Kara and her parents, Richard and Marilyn Hermstead alleging that Kara Hermstead's negligence was the cause of the accident. The Hettwers joined Farmers Insurance Company of Idaho (Farmers) as a defendant, alleging that (1) Farmers insured the Hermsteads under an automobile liability policy at the time of the accident, (2) the Hettwers had presented claims to Farmers for payment under the Hermsteads' policy, and (3) Farmers had intentionally and tortiously denied or delayed payment on these claims.

Farmers moved for summary judgment dismissing the action against Farmers. After the motion for summary judgment was filed, the Hettwers moved to amend the complaint. In the proposed amended complaint the Hettwers alleged that Farmers was also their insurer under a contract of automobile insurance and that Farmers had denied and delayed payments on claims made under that contract.

The trial court granted the motion of Farmers for summary judgment, stating that a tort victim may not sue a tortfeasor's insurer directly unless one of the factors enumerated in *Bean v. Allstate Insurance Co.*, 285 Md. 572, 403 A.2d 793 (1979) exists. At the same time the trial court denied the motion to amend of the Hettwers, stating that misjoinder would occur if the amendment were allowed. The Hettwers appealed the summary judgment granting dismissal, but did not appeal the denial of the motion to amend. We affirm the dismissal of the claim against Farmers as the insurer of the Hermsteads.

The Hettwers assert that we should extend the principle we announced in *White v. Unigard Mutual Insurance Co.*, 112 Idaho 94, 730 P.2d 1014 (1986), to this case. We conclude that this extension would be erroneous.

In *White* we held "that there exists a common law tort action, distinct from an action on the contract, for an insurer's bad faith in settling the first party claims of its

insured." *Id.* at 100, 730 P.2d at 1020. Here we have a third-party claim by an injured party against the insurer of the party who was alleged to have been negligent in causing the injuries. The Hettwers argue that *Rawlings v. Apodaca*, 151 Ariz. 149, 726 P.2d 565 (1986), cited by this Court in *White*, supports the extension of *White* to the facts here. We disagree.

In *Rawlings*, the owners of a dairy farm who had sustained fire damage to their property sued their neighbors whom they alleged had started the fire. They also sued their insurance company under a homeowners policy, alleging breach of the obligation of good faith and fair dealing. The insurer paid the dairy farm owners the limits of their homeowners policy, but failed to furnish them with a copy of the investigation report concerning the cause of the fire and failed to advise them of the liability policy the insurer had issued to the neighbors. The Supreme Court of Arizona stated that the question presented was "whether an insurer violates the covenant of good faith and fair dealing when, for the purpose of protecting its own interests, it acts improperly to impede its insured's recovery of the uninsured portion of the loss." *Id.* 726 P.2d at 569. The action was a first-party claim by an insured against its own insurer for failure to act in good faith.

Here, the claim of the Hettwers against Farmers that was dismissed was the third-party claim, not a first-party claim. Therefore, neither *White* nor *Rawlings* is applicable. Whether the Hettwers have a valid first-party claim against Farmers is not presented to us in this appeal.

The Maryland Court of Appeals in the *Bean* case, cited by the trial court in its decision granting summary judgment, was a third-party action. There, the court said: "The narrow question presented in this case is whether one who has recovered a judgment in a personal injury suit stemming from an automobile accident may bring a direct action against his judgment debtor's insurer for the amount that the judgment exceeds the policy limits." 403 A.2d at 793–94. The court in *Bean* refused to allow a third-party claim against an in-

surer "in the absence of explicit authorization to that effect." *Id.* at 796. This holding is consistent with our decisions on the question. *Pocatello Indus. Park Co. v. Steel West, Inc.*, 101 Idaho 783, 791, 621 P.2d 399, 407 (1980); *Downing v. Travelers Ins. Co.*, 107 Idaho 511, 514, 691 P.2d 375, 378 (1984). There is no basis for the Hettwers' third-party action against Farmers.

We affirm the dismissal and find this appeal to be unreasonable and without foundation. We award costs and attorney fees to respondent.

BAKES, C.J., and BOYLE and McDEVITT, JJ., concur.

BISTLINE, Justice, concurring and dissenting in part.

I.

Justice Johnson's opinion gains my concurrence insofar as it affirms Judge Magnuson's dismissal of the Hettwers' third party action against Farmers Insurance. Nevertheless, on a careful perusal of the authority relied on by the Hettwers, including our own *White v. Uniguard Mut. Ins. Co.*, 112 Idaho 94, 730 P.2d 1014 (1986), and our own *Chancler v. American Hardware Mut. Ins. Co.*, 109 Idaho 841, 712 P.2d 542 (1985), I am persuaded that one day this Court, differently constituted one may be certain, will see merit in the Hettwers' contention that their action against Farmers is not so farfetched as others may think.

II.

In my view, based on a number of reasons, it is patently unjust to grant attorneys' fees to Farmers Insurance and against the Hettwers as a penalty, so it is supposed, for taking and pursuing an unworthy appeal. It is noteworthy that Judge Magnuson made no such award at the trial court level, notwithstanding that he was the first to rule that such an action could not be directly maintained against Farmers by the Hettwers, who stood in a third party position. Additionally, and as pointed out in the brief of Farmers Insur-

ance filed in this Court, at page 17, the Hettwers frankly "admit that there is no authority in Idaho for a direct action by third parties against an insurance carrier." But, as readily recognized by Farmers Insurance in the immediately following sentence, "apparently the [Hettwers] have brought this appeal in hope that this court would expand bad faith causes of action." Farmers Insurance brief at 17. Today the Court penalizes the Hettwers for their expectations.

In response to the Farmers Insurance brief, the Hettwers point out that their position differs from the situations in *Pocatello Ind. Park Co. v. Steel West, Inc.*, 101 Idaho 783, 621 P.2d 399 (1980), and *Downing v. Travelers Ins. Co.*, 107 Idaho 511, 691 P.2d 375 (1984), in that both they, the Hettwers, and the defendant tort-feasor, Mrs. Hermstad, were insured by Farmers Insurance, which relationship the Hettwers opine created a de facto privity sufficient to justify their attempt at bringing about a new tangent to a claim for bad faith failure to engage in settlement negotiations. Counsel for the Hettwers made a respectable and well thought out presentation to Judge Magnuson when confronted by the latter as to counsel's theory of liability at oral argument on Farmers Insurance's motion for summary judgment:

> THE COURT: Where does that duty on the part of the insurance company arise in Idaho towards your client on the third-party basis?
>
> MR. CHILD: I'm glad you asked that, your Honor.
>
> THE COURT: I am, too.
>
> MR. CHILD: There is no authority in Idaho that there is such liability on a third-party context. Our argument is that the same public policy arguments that were raised by the court in *White v. Uniguard:* the fact that you've got a unique personal-type contract as opposed to a commercial-type contract; the adhesionary aspects of the contract in that there's lack of bargaining strength on the insured's part; that we've got standard insurance contract-type terms; that the insured is motivated to enter into this contract out of a feeling towards his own

or other's financial well-being; the fact of the nature of the service-type of a contract; those same sorts of public policy considerations apply in what I call a hybrid case here.

> I wouldn't be standing here today, your Honor, if Mr. Merica was representing Aetna Insurance Company and we were making a third-party claim there. But *the fact is that my client also had a policy of insurance with the same company, Farmers.* They were processing their claims through the same claims office, many times through the same individuals. They had a right to expect to be treated fairly and in good faith by their own insurance company.
>
> And here's the rub: Our contention is, not only on their claim on their own policy, but also upon the claim on the Hermstads' policy because of the fact that they were dealing with the same individuals, it just does violence to the public policy concepts in *White v. Uniguard,* and it does violence to the standards, common sense in the community to expect that when you go into your insurance company *they're going to have to deal fairly with you on certain types of claims, but not on others.*

R., 21–22 (emphasis added).

The Hettwers, completely forthright and candid, as they near the conclusion of their final brief, show their awareness that they might not prevail, but that "[e]ven if this Court rules against the Hettwers, it is clear that they have brought an appeal in good faith seeking a ruling in an area of unsettled law. There is no controlling Idaho authority for or against the proposition asserted by the Hettwers, as was recognized by both parties and the trial court." Appellants' Reply Brief, 5.

As it turns out, the Hettwers have found themselves at the wrong time or in the wrong court in their effort to bring about a change in the law. So much for that. But, that this Court is not persuaded does not justify awarding attorneys fees to Farmers Insurance for its successful resistance. Nothing in the record sustains a finding

that the appeal was taken to harass Farmers Insurance or a finding that the Court somehow has been greatly put upon in being caused to hear such an argument.[1]

If the majority is awarding attorneys' fees to Farmers Insurance Company in the belief that doing so will diminish the ever increasing number of appeals, then, too, I cannot subscribe to such a philosophy. The Hettwers have made their attempt to fashion a change in the law, a change which it is believed will be beneficial:

> Certainly the special relationship that arises from the contract between an insured and his insurer, and is recognized in the context of adjusting first-party claims cannot be immediately extinguished upon the submission to the same insurance adjustor of a third-party claim which arose out of the same occurrence.... For these reasons the [Hettwers] urge this Court to adopt a rule extending ... *White* and ... *Reynolds* to the third party submission of claims to the victim's own insurance company.

Appellants' Brief, 13. Here the Hettwers were doing aught but correctly taking note of the "special relationship" doctrine which emanated from this Court in the well-reasoned *White v. Uniguard* opinion, itself an improvement in the law of certain contractual relationships:

### C. THE SPECIAL RELATIONSHIP BETWEEN INSURER AND INSURED

The imposition of liability in tort for bad faith breach of an insurance contract is further warranted when one considers the special relationship which exists between insurer and insured. 'The insurance contract has long been recognized as giving rise to a special relationship between insurer and insured (see *Manhattan Fire Ins. Co. v. Weill & Ullman*, 69 Va. (28 Gratt.) 389, 26 Am.Rep. 364 (1877)), which requires that the parties deal with each other fairly, honestly, and in good faith (*Germania Ins. Co. v. Rudwig*, 80 Ky. 223, 235 (1882)).' McCarthy, *Punitive Damages in Bad Faith Cases 3d*, 23 (1983); accord, e.g., *Noble [v. National American Life Insurance Co.] supra* [128 Ariz. 188], 624 P.2d [866] at 867 [1981]. John G. Holinka, commenting on insurance contracts, noted that it is the unique, 'personal' (non-commercial) nature of insurance contracts which justifies the imposition of the duty of good faith and fair dealing. Holinka, *Damages for Mental Suffering Caused by Insurers: Recent developments in the Law of Tort and Contract*, 48 Notre Dame Lawyer 1303 (1973). The insured-insurer relationship is one 'characterized by elements of public interest, adhesion and fiduciary responsibility.' *Seaman's Direct Buying Serv. v. Standard Oil*, 36 Cal.3d 752, 206 Cal.Rptr. 354, 686 P.2d 1158, 1166 (1984). As Louderback and Jurika noted in *Standards for Limiting the Tort of Bad Faith Breach of Contract*, 16 U.S.F.L.Rev. 187 (1982):

> The adhesionary aspects of the insurance contract, including the lack of bargaining strength of the insured, the contracts standardized terms, the motivation of the insured for entering into the transaction and the nature of the service for which the contract is executed, distinguish this contract [insurance contract] from most other non-insurance commercial contracts. These features characteristic of the insurance contract make it particularly susceptible to public policy considerations. 16 U.S.F.L.Rev. 187, 200–01 (1982).

It is in fact these 'adhesionary aspects' of the insurance contract which have prompted this court in the past to come to the aid of the insured. *Chancler v. American Hardware Mut. Ins. Co.*, 109 Idaho 841, 712 P.2d 542 (1985); *Moss v. Mid–American Fire and Marine Ins. Co.*, 103 Idaho 298, 647 P.2d 754 (1982).

Louderback and Jurika observed that, although the insurance companies cannot be said to be fiduciaries for their insureds in the strict meaning of the term, 'under certain circumstances, the insured ... [has] a right to place [his] trust and confidence in these larger entities.'

---

1. This Court, by reason of its superior position and self-promulgated rules could have, if it deemed the appeal inconsequential, assigned it to the Court of Appeals.

Louderback and Jurika, *Standards for Limiting the Tort of Bad Faith Breach of Contract, MFA Mutual Insurance Co. v. Flint,* 574 S.W.2d 718 (Tenn.1978). As the *Rawlings* court noted:

> The industry itself seems to recognize these principles. Advertising programs portraying customers as being 'in good hands' or dealing with a 'good neighbor' emphasize a special type of relationship between the insured and the insurer—one in which trust, confidence and peace of mind have some part. *Rawlings, supra,* 726 P.2d at 571 n. 3.

This special relationship justifies the recognition of a covenant of good faith and fair dealing.

*White,* 112 Idaho at 99, 730 P.2d at 1019. In our *Chancler* opinion, cited in the above *White* quotation, we stated:

> Idaho law governing the interpretation of insurance policies was set forth well by Justice Shepard in *Moss v. Mid–America Fire and Marine Ins. Co.,* 103 Idaho 298, 300, 647 P.2d 754, 756 (1982):
>
> > This Court has long recognized that *insurance policies are contracts of adhesion, not subject to negotiation between the parties, and hence must be construed most strongly against the insurer. Abbie Uriguen Olds. Buick, Inc. v. United States Fire Ins. Co.,* 95 Idaho 501, 511 P.2d 783 (1973); *Stephens v. New Hampshire Ins. Co.,* 92 Idaho 537, 447 P.2d 14 (1968); *Scharbach v. Continental Cas. Co.,* 83 Idaho 589, 366 P.2d 826 (1961); *Rollefson v. Lutheran Brotherhood,* 64 Idaho 331, 132 P.2d 758 (1942). *The provision at issue today is one which seeks to exclude the insurer's coverage. Such an exclusion must be strictly construed in favor of the insured. Hahn v. Alaska Title Guaranty Co.,* 557 P.2d 143 (Alaska, 1976); *Mission Ins. Co. v. Nethers,* 119 Ariz. 405, 581 P.2d 250 (App.1978); *State Farm Mutual Auto Ins. Co. v. Partridge,* 10 Cal.3d 94, 109 Cal.Rptr. 811, 514 P.2d 123 (1973); *Northwestern Nat. Cas. Co. v. Phalen,* [182 Mont. 448], 597 P.2d 720 (1979); *Conner v. Transamerica Ins. Co.,* 496 P.2d 770 (Okl.1972); *McDonald*

> > *Industries, Inc. v. Rollins Leasing Corp.,* 26 Wash.App. 376, 613 P.2d 800 (1980). *See also Bonner County v. Panhandle Rodeo Ass'n. Inc.,* 101 Idaho 772, 620 P.2d 1102 (1980); *Farmers Ins. Group v. Sessions,* 100 Idaho 914, 607 P.2d 422 (1980). *Hence, the courts have held that the burden is on the insurer to use clear and precise language if it wishes to restrict the scope of its coverage. Goforth v. Franklin Life Ins. Co.,* 202 Kan. 413, 449 P.2d 477 (1969); *Anderson v. Nationwide Life Ins. Co.,* 6 Kan.App.2d 163, 627 P.2d 344 (1981); *Harvey's Wagon Wheel, Inc. v. MacSween,* 96 Nev. 215, 606 P.2d 1095 (1980); ... [See also ] *Farmers Ins. Group v. Sessions,* 100 Idaho 914, 607 P.2d 422 (1980) (holding that an exclusionary clause in an insurance contract that lends itself to different interpretations is ambiguous and must be construed in a manner most favorably to the insured). (Emphasis added.)
>
> *Accord, Cooling [v. U.S.F. & G.],* 269 So.2d [294,] at 297 [1972].

*Chancler.,* 109 Idaho at 847, 712 P.2d at 548 (emphasis in original).

In *White,* we relied upon the Arizona Supreme Court's *Rawlings* opinion, and quoted extensively from it:

> The *Rawlings* Court aptly observed:
>
> > Because of the disparity in bargaining power and the nature of the contract, the insurer receives both premium and control. *Barrera v. State Farm Mutual Automobile Insurance Co.,* 71 Cal.2d 659, 79 Cal.Rptr. 106, 117, 456 P.2d 674, 685 (1969).... In first-party situations the insurer sets the conditions for both presentment and payment of claims. *In both first- and third-party situations the contract and the nature of the relationship effectively give the insurer an almost adjudicatory responsibility. The insurer evaluates the claim, determines whether it falls within the coverage provided, assesses its monetary value, decides on its validity and passes upon payment.* Although the insured is not without remedies if he disagrees with the insurer, the very invocation of those

remedies detracts significantly from the protection or security which was the object of the transaction. Thus, the insurance contract and the relationship it creates contain more than the company's bare promise to pay certain claims when forced to do so; *implicit in the contract and the relationship is the insurer's obligation to play fairly with its insured.* [Citations omitted.]

*Rawlings,* ..., 726 P.2d at 570–71 (footnote omitted).

Thus, where an insurer 'intentionally and unreasonably denies or delays payment' on a claim, and in the process harms the claimant in such a way not fully compensable at contract, the claimant can bring an action in tort to recover for the harm done. *Id.,* 726 P.2d at 572. The availability of an action for bad faith will provide incentive to insurers to honor their implied covenant to the insureds.

*White,* 112 Idaho at 98–9, 730 P.2d at 1018–19 (footnotes omitted) (emphasis added).

Justice Johnson provides a succinct and generally accurate portrayal of the factual scenario in the *Rawlings* case. Because of a belief that the Hettwers are not off-base in asserting that *Rawlings* is support justifying their cause of action against Farmers, I will be presumptuous enough to embellish upon the skeletal portrayal that Justice Johnson has proffered.

First, there needs to be considered the filing of the Rawlings complaint, i.e., when was it filed, naming what parties as defendants, and under what theories of recovery. Justice Johnson sees in sequence that the Rawlings, *following the fire,* sued the Apodacas (their neighbors); they also sued Farmers Insurance Company; and Farmers Insurance then paid to the Rawlings the limits of their policy. However, it is palpably clear from the opinion of the Arizona Supreme Court that payment of the first party claim preceded the legal action: "On August 28, 1979, Farmers sent Rawlings a

check for $10,000, their policy limit." 726 P.2d at 568. At that time the law suit had *not* been filed. With the performance of the payment due under the insurance contract, there was no longer any first party relationship between Farmers and the Rawlings. That statement by the Arizona Supreme Court, above quoted, appears in that part of its opinion captioned "FACTS," all of which more fully appear on pages 568 and one column of 569.

The Arizona Court of Appeals had previously set out the written detailed findings of fact made by the trial court, nine in number, which can be found at 726 P.2d at 602–03. The Arizona Court of Appeals in reversing the trial court's damage award based on Farmers' *noncontractual* breach of duties owed to the Rawlings made it clear beyond cavil that there is no suggestion that Farmers refused to pay any claim made by the Rawlings or that payment was unreasonably delayed. "[T]he evidence shows that it promptly paid the full policy limits of $10,000 ..." 726 P.2d at 603.

Accordingly, it has to be accepted that the Rawlings action brought against Farmers was not a first party action; there simply was not a first party relationship still in existence. It had to be, and was, a third party relationship, not one hanging in the sky, however, but attendant or appurtenant to its contemporaneous action brought against the Apodacas based on the latter's negligence in starting the fire which escaped and destroyed the hay barn.[2] This brings us down to the caption of the one and only action which the Rawlings filed, namely:

> David L. Rawlings and Elizabeth Rawlings, husband and wife,
> > Plaintiffs,
>
> v.
>
> Joseph Apodaca and Jane Doe Apodaca, his wife; Farmers Insurance Company of Arizona, an Arizona Corporation,
> > Defendants.[3]

---

**2.** Another couple, the Raneys, also joined in bringing the action (and recovering) but only against Apodaca, et ux. They, too, were damaged by the same fire, but had had no relationship with Farmers.

**3.** From the Court of Appeals opinion we learn that the Apodacas were assessed $33,369.00 plus interest damages in favor of the Rawlings. 726 P.2d at 597.

I deem it of substantial significance that the Rawlings action against Farmers Insurance Company proceeded through three tiers of the Arizona judicial system without jurisdictional challenge by the courts or by Farmers Insurance. I also conclude that, where this Court in *White* based its opinion largely upon *Rawlings,* it was not in the least inappropriate for the Hettwers to utilize the *Rawlings* format in their pursuit of redress from Farmers Insurance Company for its bad faith in intentionally and tortiously denying or delaying the Hettwers' claims against Mrs. Hermstad, which is the basis of the action against Farmers. This is a classic example of the reason for the rule of *Rawlings* which this Court viewed favorably in *White:*

> Of course the mere failure to immediately settle what later proves to be a valid claim does not of itself establish 'bad faith.' As indicated earlier, the insured must show the insurer 'intentionally and unreasonably denies or delays payment....' *Rawlings, supra* 726 P.2d at 572. An insurer does not act in bad faith when it challenges the validity of a 'fairly debatable' claim, or when its delay results from honest mistakes. *Id.,* 726 P.2d at 572–573; *accord, Noble, supra,* 624 P.2d at 868.

*White,* 112 Idaho at 100, 730 P.2d at 1020.

In *Rawlings,* as has been alluded to, those plaintiffs sued the Apodacas for their negligence, and they sued Farmers Insurance for its bad faith—not in the handling of their first party claim which had been fully settled—but for its deception and nondisclosure in not turning over the investigator's report showing that the Apodacas were the cause of the barn burning down, and for not disclosing that the latter were substantially covered ($100,000) by a policy of liability issued by—of all the many firms who might have done so—Farmers Insurance. The Arizona Supreme Court was deeply concerned with the uncontradicted factual scenario. As appropriate to this discussion, it noted the following:

> Soon after the fire, Rawlings filed their insurance claim, and Farmers commissioned a private investigating firm to determine the cause of the fire. When the fire investigators came to Rawlings' farm on August 3, Mr. Rawlings told them that he had sizeable uninsured losses and that he was interested in pursuing a claim against the Apodacas. Rawlings specifically asked whether he should have his own investigation done or whether he would have access to the report. They told him that he would receive a copy of their report and need not undertake his own investigation. Rawlings also suggested that Farmers might want to join its subrogation claim with Rawlings' claim against Apodacas. Based on the assurances that they would have access to the investigative report, the Rawlings did not hire their own investigator.
>
> The report was prepared August 17, 1979. The investigators verified that the Apodacas had started the fire. They also learned that the Apodacas had a $100,000 insurance policy covering their liability for the damages sustained by Rawlings. This policy had also been written by Farmers, *which found itself in the unhappy position of having insured both a small portion of Rawlings' fire loss and all of Apodacas' liability exposure for that loss.*
>
> Both before and after the report was prepared, Mr. Rawlings spoke with Darrell Schultz, the Farmers representative who had retained the fire investigators, and was told that he would receive the report as soon as it was ready. In later conversations, however, Farmers referred Rawlings to the investigative firm, which in turn referred them back to Farmers. *Farmers did not tell Rawlings that it already had the report nor that it was Apodacas' liability insurer.*
>
> On August 28, 1979 Farmers sent Rawlings a check for $10,000, their policy limit. Having failed to obtain the report, in September Rawlings retained an attorney to pursue the matter. The lawyer contacted Schultz, who said that the report had been received, refused to provide it and said that it contained nothing of interest to Rawlings. The trial judge specifically found that Schultz

knew this to be false. (Findings of Fact Nos. 5 and 6.) Rawlings' attorney then filed a complaint with the Arizona Department of Insurance. Farmers finally agreed to give Rawlings the report, but only if Rawlings paid half its cost. Rawlings refused and instead brought suit against both the Apodacas and Farmers. Rawlings alleged that the Apodacas negligently caused the fire and that Farmers '... breached its obligation of good faith and fair dealing with its insureds....' Rawlings also sought punitive damages and attorneys' fees. Having filed a lawsuit against Farmers, Rawlings was finally able to obtain the report through deposition of the custodian of records of the investigative firm.

During trial, James Richardson, an expert witness on insurance practices, testified that when an insurer is faced with a conflict of interest, such as that which faced Farmers, the proper procedure is not to 'betray' one insured to protect the company's own purse, but to represent each insured independently. Because the report was prepared for Farmers when it was acting as Rawlings' insurer, the expert testified, Farmers should have cooperated with the Rawlings.

The trial court found that the Apodacas had negligently caused the fire and that Farmers had breached its duty of good faith and fair dealing. The court also found that Rawlings was damaged by Farmers' conduct.

*Rawlings v. Apodaca*, 726 P.2d 565, 568–69 (1986) (emphasis added).

To which I add that, in reading *Bean v. Allstate Ins. Co.*, 285 Md. 572, 403 A.2d 793 (1979), note may be taken that the appellate court in affirming the trial court did *not* assess attorneys' fees against Nellie Bean, and did report that it had found a then recent decision from Florida, *Thompson v. Commercial Union Ins. Co. of New York*, 250 So.2d 259 (Fla.1971), which held that:

[A] judgment creditor is a third party beneficiary of his judgment debtor's automobile liability insurance policy. As third party beneficiary, the court reasoned, the judgment debtor is the real party in interest and may institute a direct action in his own name to recover from his debtor's insurer the excess of his judgment over policy limits where the insurer has handled his claim negligently or in bad faith. *The Florida court offered two policy justifications for allowing a direct action:* first, 'to encourage and favor compromise and settlement of controversies,' and second, to make the result consistent with that state's financial responsibility statute, the primary purpose of which was to protect third parties. *Id.* at 262–63.

*Bean,* 403 A.2d at 795.

While the odds that the Hettwers' attempts to make new law in what is now accepted as a new area of the law may not have been favorable, this Court's award of attorneys' fees to Farmers Insurance does not withstand close scrutiny. One is reminded of the *Minich* [4] case, wherein both Justice Donaldson and myself strongly dissented when Justices McFadden, Shepard, and Bakes took it upon themselves to create a new precedent for assessing attorneys' fees against litigants whose counsel filed appeals deemed by the Court to be frivolous or without foundation. Thousands of dollars in fees have been generated by the *Minich* court's usurpation of the legislative field. Today, as a result of that usurpation, the Hettwers' well-intended endeavor to make new law in a fairly new field is being penalized.

The Hettwers' failed effort reminds me of a similar instance where an attempt was made to create new law in *Everett v. Trunnell,* and my similar comments at that time:

Counsel for the appellants has endeavored to gain compensation for the losses his clients undoubtedly suffered. Counsel has urged new and novel contentions, and has submitted authority which did not convince the trial court, and has not convinced this Court. On other days and

---

4. *Minich v. Gem State Developers, Inc.,* 99 Idaho 911, 919–22, 591 P.2d 1078, 1086–89 (1979) (separate opinions of Donaldson, J., and Bistline, J.).

at other times, however, courts have accepted new and novel contentions, and thus new law is made. Here counsel for the respondents has submitted to us a most excellent brief containing authority and argument by which they have sought to persuade this Court against accepting the appellants' argument. Although respondents are successful, the tremendous amount of effort which has gone into their brief obviously demonstrates that counsel for the respondents did not see adverse counsel's attempt at creating new law as undeserving of close attention and frivolous in nature. Nor did the trial judge. Nor do I. For that reason I do not vote an award of attorney's fees against the appellants.

*Everett v. Trunnell,* 105 Idaho 787, 791–92, 673 P.2d 387, 391–92 (1983) (Bistline, J. concurring in part and dissenting in part) (footnote omitted).

Although it is not unlikely that, in the eleven years which have gone by since *Minich's* rule relative to attorneys' fees on appeal was loosed on the public, I may have joined an occasional opinion making such an award, in retrospect it was unwise to have done so in the absence of a legislative enactment providing the requisite authority. As my opinion in *Minich* pointed out, for this Court to continue to award attorneys' fees under the *Minich* rule, or any court-promulgated rule, is a violation of the Idaho Constitution's separation of powers. "The Court bears the ultimate responsibility of safeguarding the integrity of our Constitution." *Minich,* 99 Idaho at 922, 591 P.2d at 1089 (Bistline, J. specially concurring). The rule of *Minich* has today been used to stifle an effort to make new law. Hence I must respectfully dissent, and must pause to wonder from whence new law will come if it is not from innovative attorneys?

BISTLINE, Justice, Dissenting on Denial of Appellants' Petition For Rehearing.

## I. INTRODUCTION

The Hettwers and their attorneys accepted in good grace an opinion from this Court which upheld the decision of the district court denying them any relief. They have been equally gracious relative to this Court's generosity in awarding attorney fees to the Farmers Insurance Company. The Hettwers' petition was timely followed by a supporting brief. The Hettwers have not in the least attempted to persuade the Court of any error in its decision affirming the trial court's denial of relief in the underlying action. The Hettwers utilized the time lapse interval between the filing of the petition and the filing of the brief to do an exhaustive research relative to this Court's awarding attorney fees against a party who by the Court is deemed to have taken an appeal which leaves the Court with an abiding belief that the appeal was brought and pursued frivolously, unreasonably, or without foundation. *Minich v. Gem State Developers, Inc.,* 99 Idaho 911, 591 P.2d 1078 (1979). That brief has been at hand for almost twenty days. Not known is how the other members of the Court view its content, but one member of the Court goes on record this day as declaring it to be an excellent brief dealing with a subject which confronts the entire trial bar, namely this Court's unconstitutional violation of the separation of powers doctrine and all of the ensuing sublitigation which has been a natural and not unforeseeable consequence of the *"Minich"* rule. Moreover, the *Minich* rule, especially as applied here, cannot help but have a stultifying effect on good faith, innovative attempts at modifying the law.

Hoping that the foregoing may have whetted the appetite of the thousand or so attorneys who were not such when the *Minich* rule surfaced in February of 1979, not from the legislature, but from this Honorable Court, with sincere pleasure I present the entire text of counsels' brief, following which will be presented a short commentary, should time permit.

## II. APPELLANTS' MEMORANDUM IN SUPPORT OF MOTION *FOR REHEARING:*

COME NOW the Appellants, by and through their attorneys, CHILD AND

FISHER, and pursuant to Rule 42, I.A.R. submit herein their Memorandum in support of their Motion for Rehearing in this matter.

The Hettwers have requested rehearing on the issue of whether attorney fees should be awarded to Farmers on appeal. Specifically, the Hettwers seek rehearing on the issue of whether this appeal was unreasonable and without foundation.

STANDARD OF REVIEW

The standard utilized to determine whether an award of attorney fees on appeal is appropriate has evolved since its initial enunciation in *Minich v. Gem State Developers, Inc.*, 99 Idaho 911, 591 P.2d 1078 (1979), wherein this Court ruled that[:]

> Since the statutory power is discretionary, attorney fees will not be awarded as a matter of right. Nor will attorney fees be awarded where the losing party brought the appeal in good faith and where a genuine issue of law was presented. In normal circumstances, attorney fees will only be awarded when this Court is left with the abiding belief that the appeal was brought, pursued or defended frivolously, unreasonably or without foundation. See I.R.C.P. 54(e)(1). 99 Idaho at 918, 591 P.2d at 1085.

In *Shelton v. The Boydstun Beach Association*, 102 Idaho 818, 641 P.2d 1005 (1982), and *Bonanza Motors, Inc. v. Webb*, 104 Idaho 234, 657 P.2d 1102 (1983), the Court of Appeals grafted an additional qualifier onto the *Minich* rule. In these cases, the Court of Appeals ruled that an award of attorney fees

> ... will not be made where a decision is based upon legal authorities from other jurisdictions, and the appeal has helped to develop Idaho case law on the subject. 104 Idaho at 237, 657 P.2d at 1105.

This rule was also followed in *Decker v. Homeguard Systems*, 105 Idaho 158, 666 P.2d 1169 (1983).

In *Etcheverry Sheep Company v. J.R. Simplot Company*, 113 Idaho 15, 740 P.2d 57 (1987), this Court cited with approval the Court of Appeals decision in *Scott v. Castle*, 104 Idaho 719, 662 P.2d 1163 (1983), and awarded attorney fees in part because 'the [appellant's] evidence argument presented no new legal standards or issues which could modify existing legal standards.' 113 Idaho at 19, 740 P.2d at 61.

The Court of Appeals further refined the standard in *Lowery v. Board of County Commissioners for Ada County*, 115 Idaho 64, 764 P.2d 431 (1988), in determining that[:]

> Where questions of law are raised, attorney fees should be awarded under I.C. § 12–121 only if the nonprevailing party advocated a plainly fallacious, and, therefore, not fairly debatable position. 115 Idaho at 69, 764 P.2d at 436.

In *Matter of Estate of Roll*, 115 Idaho 797, 770 P.2d 806 (1989), this Court further expressed that[:]

> [A]ttorney fees are awardable if an appeal does no more than simply invite an appellate court to second-guess the trial court on conflicting evidence or if the law is well settled and appellants have made no substantial showing that the district court misapplied the law. 115 Idaho at 800, 770 P.2d at 809. The Court of Appeals also recognized the 'well settled law' ground for an award of attorney fees on appeal in *State of Alaska ex rel. Sweat v. Hansen*, 116 Idaho 927, 782 P.2d 50 (1989). In *Matter of Estate of Spencer*, 106 Idaho 316, 678 P.2d 108 (1984), the Court of Appeals refused to award attorney fees on appeal for the reason that Idaho law was previously unsettled on the determinative issue.

This Court's decision in *Stamper v. Allstate Insurance Company*, 115 Idaho 237, 766 P.2d 707 (1988), provides some guidance to practitioners as to what amounts to 'well settled law' in Idaho. Counsel for the appellant in *Stamper* urged the Court to overrule a three year old precedent established in *Hammon v. Farmers Insurance*, 109 Idaho 286, 707 P.2d 397 (1985). Recognizing that the facts presented in the *Hammon* and

*Stamper* cases were 'virtually identical' and that the issues presented in both cases were 'identical,' this Court determined that the *Stamper* appeal was not one brought frivolously, unreasonably or without foundation, since the *Hammon* case, representing a closely divided reversal of the Court of Appeals decision, did not amount to 'well settled law.'

ARGUMENT

This Court's opinion in this appeal was based upon legal authority from Maryland, *Bean v. Allstate Insurance Co.,* [285 Md. 572], 403 A.2d 793 (1979). As this Court correctly pointed out, the *Bean* case is consistent with the Idaho cases of *Pocatello Industrial Park Co. v. Steelwest, Inc.,* 101 Idaho 783, 621 P.2d 399 (1980), and *Downing v. Travelers [Travelers] Insurance Co.,* 107 Idaho 511, 691 P.2d 375 (1984). With all due respect to this Court, however, these three cases do not represent well settled law on the issue presented in this appeal. All three of these cases were suits by injured persons against the insurance company of the alleged tort-feasor *directly upon the liability of the insured tort-feasor.* In each of these three cases there was no allegation that the insurance company itself had committed any wrongdoing. The issue in this appeal was whether a bad faith action will lie against the tort-feasing insurance company by a Plaintiff who is not a party to the underlying insurance agreement, but is insured by the same insurance company.

In this case the Hettwers sought not the overruling of a three year old precedent as in *Stamper,* but sought the development of precedent in not merely an unsettled area of law, but an area of law upon which the Idaho Appellate Courts had heretofore been silent. How can it be said to be unreasonable to seek the development of Idaho precedent in an undeveloped area of Idaho law, yet, as in the *Stamper* case, determined that it is reasonable to seek reversal of three year old precedent?

In some sense, every appeal brought to establish a precedent where none previously existed is brought without founda-

tion. It should be noted that such was the case in *Minich v. Gem State Developers,* wherein able counsel successfully urged this Court to adopt a novel reading of Idaho Code § 12–121 and to establish the authority of this Court to award attorney fees on appeal. In the present appeal, however, the Hettwers did not proceed without foundation. They relied on case authority from Idaho and other jurisdictions in support of their position on the issue on appeal. How can it be said that the Hettwers' arguments lack foundation, yet, as in the *Stamper* case, also be said that an argument urging reversal of three year old Idaho precedent directly on point is well founded?

This appeal presented an argument for the establishment of a new legal standard in Idaho. It also sought, as this Court recognized, that the principle announced in *White v. Unigard Mutual Insurance Co.,* 112 Idaho 94, 730 P.2d 1014 (1986) should be extended to this case.

This appeal raised a question of law and urged a resolution of that question in accordance with principles enunciated by both this Court and others. The issue raised was fairly debatable and was not plainly fallacious.

In this appeal, the Hettwers additionally made a substantial showing that the District Court misapplied the *Bean* case to the facts of this case, since *Bean* turned on a Maryland statute unlike any Idaho insurance statutes, and since *Bean* did not involve any allegation of bad faith, but was a suit against the insurance company on the negligence of another.

CONCLUSION

This Court should grant rehearing on the issue of an award of attorney fees on appeal for the reasons that this appeal was decided on legal authorities from other jurisdictions; it has helped to develop Idaho case law; it presented an argument for a new legal standard and the extension of an existing legal standard; Idaho law on the issue was previously unsettled or nonexistent; it in-

volved a substantial showing that the District Court misapplied the law and the Hettwers advocated a fairly debatable position which was not plainly fallacious.

### III. THE *MINICH* RULE

The *Minich* rule was a byproduct of some genuine issues which were raised by the defendants/appellants, the Marcums and their corporation in *Minich*. The genuine issues giving rise to the appeal need not be a concern in the present discussion, but note should be taken that it was a fairly involved case. It appeared then, and still does eleven years later, to be an opinion dealing fairly and squarely with the issues which had been preserved for appeal. The respondents were said to have asked for an award of attorney fees; on the assertion that the legislature's I.C. § 12–121 was sufficient legislative authority for making such an award.

What "we," consisting of three members of the Court, concluded was that the respondents' request *could* be granted by the Court if only "we should construe the singular word 'judge' (§ 12–121) to mean the plural word 'justices.' " Not in the least daunted at the prospect of engaging in such shenanigans and resultant misuse of the English language, which language had been properly used by the legislature, the three "we's" did so, and so the *Minich* rule was created out of foolscap. But, as is often the case in such escapades, the respondents received no benefit under the rule which they had successfully brought about. The Court's opinion implicitly recognized that the appeal was taken in good faith. The counterpart of the rule had been also manufactured by the Court: "Nor will attorney fees be awarded where the losing party brought the appeal in good faith and where a genuine issue of law was presented." *Minich*, 99 Idaho at 918, 591 P.2d at 1085.

Justice Donaldson was quick to challenge the Court's abuse of the English language. He *wrote* in amazement at the majority's remarkable dissection and reconstruction of the English language:

The respondent requested attorney fees on appeal pursuant to I.C. § 12–121 and the majority while denying them, states they may be awarded in an appeal under certain circumstances. I cannot agree with that part of the majority opinion that holds that I.C. § 12–121 authorizes attorney fees on appeal. This statute provides that a 'judge' may award attorney fees to the prevailing party in any civil action. I do not believe that this statute empowers 'justices' of the Idaho Supreme Court to award attorney fees on appeal to the prevailing party in a civil action. I am unable to find definitions in the Idaho Constitution or the Idaho Code 'judge' and 'justice.' There are several sections in the Constitution and statutes in the Code, however, where district 'judges' are impliedly distinguished from Supreme Court 'justices.' The Idaho Constitution refers to members of the Supreme Court as 'justices' and members of the district bench as 'judges.' Also, Title 1, Ch. 2 of the Idaho Code, which pertains to the Idaho Supreme Court, refers to members of the Supreme Court as 'justices.' Title 1, Ch. 7 of the Idaho Code, which pertains to the Idaho district courts, refers to members of the district bench as 'judges.' The conclusion to be drawn from the examples cited above is that the term 'judge' is not to be considered synonymous with the term 'justice.' In addition, the statute states that 'the judge' may award attorney fees. The statute reads in singular, i.e. one judge. Idaho Code § 73–114 establishes the rule of construction that '... the singular number includes the plural....' This rule of construction is not mandatory, but merely instructive, and is to be implemented only when necessary to carry out the obvious intent of the legislature. *C. Forsman Real Estate Co. v. Hatch*, 97 Idaho 511, 547 P.2d 1116 (1976). I cannot say that it is necessary to apply this rule of construction to I.C. § 12–121 to carry out the obvious intent of the legislature. Therefore the singular number in I.C. § 12–121 should not include the plural. If the statute can only be read in

the singular, it does not allow this Court to award attorney fees. Article 5, § 6 of the Idaho Constitution provides that any decision of the Supreme Court must be announced by a majority of the justices. Under the statute one justice rather than a majority of the justices could award attorney fees, a result repugnant to art. 5, § 6. I do not believe that it was the intent of the legislature to empower this Court to award attorney fees on appeal by enactment of I.C. § 12–121. The respondent's request for attorney fees should be denied.

*Minich,* 99 Idaho at 919, 591 P.2d at 1086.

I concurred in Justice Donaldson's views, adding that: "[T]he distinction which he has carefully drawn is but one reason for holding that attorney fees on appeal are not provided for in either I.C. § 12–120 or § 12–121. My opinion "doubted both the wisdom and the lawfulness of a court rule which essentially amends a substantive statute ... It cannot be gainsaid that the awarding of attorney fees is a matter of substantive law." 99 Idaho at 921, 591 P.2d at 1088. I pointed to the views expressed by Justice McFadden in a dissent in *State v. McCoy,* 94 Idaho 236, 486 P.2d 247 (1971), "Justice McFadden ... expressed concern over a majority opinion which held a statute 'unconstitutional as being a legislative encroachment on the inherent powers of the judiciary.' ... The concern of Justice McFadden ... was separation of powers. In his words: 'This Court must exercise special caution in this area.' " 99 Idaho at 921, 591 P.2d at 1088.

### ADDENDUM

After the foregoing was written, and with it consuming at the most five minutes to visit the state law library, the *Minich* file was eleven years later re-examined for the purpose of analyzing the respondent's unusual request for attorney fees on appeal. We had previously received such requests, and regularly ignored or denied the

same. Extremely bothersome was this statement in the Court's opinion: "Respondents maintain I.C. § 12–121 provides the authority for this Court to make an award to the prevailing party for reasonable attorney fees incurred in preparing for this appeal." 99 Idaho at 918, 591 P.2d at 1085.[1] Justice Donaldson's immediate response was, as earlier above noted: "I cannot agree ... that I.C. § 12–121 authorizes attorney fees on appeal." *Id.* at 919, 591 P.2d at 1086. He was absolutely correct. The statute as then written made no mention of proceedings on appeal. The word "appeal" went wholly unmentioned. To this day the statute I.C. § 12–121 makes no mention of "appeal."

Such being the existing state of affairs, it was in order to examine the respondent's brief in *Minich* so as to ascertain whether the rationale of the opinion for the Court in fact did track what the respondents maintained, *i.e.,* did respondents' brief, as did the Court's opinion, engage in resorting to I.C. § 73–114 to twist the language of I.C. § 12–121 so as to effect changing of the singular word judge to plural justices. The answer is that the respondent's brief advanced no such contention. That brief did not even allude to I.C. § 12–121 or to I.C. § 73–114. The further answer found therein tells the rest of the story.

The respondents at trial had been awarded attorney fees in the amount of $4250, and the opinion so noted. 99 Idaho at 917–18, 591 P.2d at 1084–85. But, as the opinion for the court does *not* disclose, but instead leaves a strong inference to the contrary, the award of fees at the trial court level was *not* made under the auspices of I.C. § 12–121! That award was made on the basis of a provision for such an award contained in the written and executed contracts of the parties, which contracts are mentioned in the court's opinion. 99 Idaho at 912, 591 P.2d at 1078. The written memorandum decision, findings, and conclusions of Judge Durtschi tells all that needs to be said:

> to adopt a novel reading of Idaho Code § 12–121 and to establish the authority of this Court to award attorney fees on appeal."

---

1. Just how misleading the *Minich* opinion was is well-illustrated in the brief filed by counsel for the Hettwers where they read *Minich* to relate that "able counsel successfully urged this Court

The suit started out as a rather straight-forward suit for specific performance with collateral damages for costs of repairs to or completion of the house and additional interest because of delay in closing. The defendants counterclaimed for specific performance or in the alternative rescission. Both sides sought attorney fees and costs.

*Minich* Record, 194. The record also bears out the above statement of Judge Durtschi. The plaintiff's complaint which requested an award of attorney fees made no mention of I.C. § 12-121. Instead it attached a copy of the executed written contract wherein appears this language: *"In any action brought upon this agreement, the prevailing party shall be entitled to reasonable attorney fees."* Record (Complaint), 8 (emphasis added). Similarly, on that basis the defendants in their first pleading requested attorney fees, apparently with expectations of becoming the prevailing party. The only distinction between the claims of each party was the amount each party expected would be expended in the effort at prevailing.

*Caveat:* As Justice McFadden wrote in *State v. McCoy*, 94 Idaho 236, 241, 486 P.2d 247, 252 (1971): "This Court must exercise special caution in this area (area being the court's creation of substantive law which is in derogation of the constitutional province of the legislature)."

There was little judicial caution exercised in *Minich*. Unfortunately, although there were two dissenters to the Court's opinion, obviously those dissenters on reading the proposed opinion were unaware that the basis of the *Minich* rationale did not in the least pertain to I.C. § 12-121. Judge Durtschi's award of attorney fees at the trial level was predicated solely on contract language which was cited and relied upon by both parties. Yet the *Minich* opinion brazenly cast aside the truth of the matter in what appears to be a devious manner:

Appellant's final assignment of error is that the district court erred in awarding attorney fees to respondents. Appellants contend that such award constitutes consequential damages and is inap-propriate in light of the trial court's decision to restore the parties to their pre-contract positions. Whatever the merit of this argument, we find it unnecessary to make an analysis of the substantive law of damages in answering this issue. Rather, we hold that the award of attorney fees was properly made under the authority of I.C. § 12-121,[2] which was enacted by the legislature in 1976 and became effective July 1, 1976, under the usual rule of I.C. § 67-510. *See V-1 Oil Co. v. State Tax Comm.*, 98 Idaho 140, 559 P.2d 756 (1977). Since the final judgment in this case was entered November 26, 1976, I.C. § 12-121 was applicable. And since the sum of $4250 was found to be reasonable by the trial judge, and the award was made so as to do complete justice between the litigants, this court will not interfere. We conclude that the award was well within the trial court's discretionary powers under the statute, and we affirm.

Finally, there is the issue of attorney fees sought by respondents on this appeal. Respondents maintain that I.C. § 12-121 provides the authority for this court to make an award to the prevailing party for reasonable attorney fees incurred in preparing for this appeal. We agree.

---

2. Attorney fees.—In any civil action, the judge may award reasonable attorney's fees to the prevailing party or parties, provided that this section shall not alter, repeal or amend any statute which otherwise provides for the award of attorney fees.

*Minich*, 99 Idaho at 917-18, 591 P.2d at 1084-85.

What remains to be seen is what the Court, now comprised of three members who were not justices in February of 1979, will do on now ascertaining that "a special caution" was not taken in writing the *Minich* opinion, and as a result there has since existed a judicial usurpation of power belonging exclusively to the legislature. There is only one proper course to follow, and that is to disavow the *Minich* rule. Doing so will benefit the Hettwers, and

they are entitled to that benefit,[2] having brought our attention to focus on the *Minich* rule as applied, and also focus on the happenstance of the *Minich* rule's existence.

*Anderson v. Ethington* points out at footnote 1, 103 Idaho 658, 659, 651 P.2d 923, 924 (1982), that Rule 54(e)(1) had an effective date of March 1, 1979, which was fourteen days *after Minich* was issued on February 16, 1979, and long, long after the *Minich* action was instituted in September of 1975, making rather absurd the rationale gratuitously contained in *Minich.* *See* I.R. C.P. 54(e)(1).

If it be that the Court persists in charging the Hettwers with attorney fees, the Hettwers, as a small recompense, can claim the honor of being the first victims of the unconstitutional *Minich* rule *after* the Supreme Court became for the first time fully aware of its illegitimate conception, as well as a violation of the doctrine of separation of powers.

---

**2.** It seemingly would be criminal to charge the Hettwers with payment of attorney fees to Farmers Insurance Company on the basis of a wholly unsustainable premise and the *Minich* rule. Does eleven years of age give it legitimacy? I think not—not by a long shot, and I join the many who will be appalled if the Court persists in so doing.