Gordon E. HOPPER, Plaintiff,

v.

David HAYES, individually and in his capacity as a police officer of Orofino, Idaho, and Nancy L. Hayes, his wife; James Pishl, individually and in his official capacity as Chief of Police of Orofino, Idaho, John Doe(s) 1 through 10, in their official capacities as police officers of Orofino, Idaho, and/or Clearwater County, Idaho; The City of Orofino, Idaho; Henry Clay, in his former official capacity as Mayor of Orofino, Idaho; Douglas Crockett, Thomas Pettigrew, Suzanne Calhoun, Clark Burnham, James W. Cochrane, and Douglas W. Shepherd, in their former and/or present official capacities as the City Council of Orofino, Idaho; Richard Nesbitt, and Irvin H. Stuker, individually and in their official capacities as investigators for the Idaho Bureau of Investigation; and Nick R. Albers, individually and in his capacity as Sheriff of Clearwater County, Defendants.

Civ. No. 82–2014.

United States District Court, D. Idaho.

Oct. 14, 1983.

Eli Rapaich and Daniel Spickler, Rapaich & Knutson, Lewiston, Idaho, for plaintiff.

Brian K. Julian, Quane, Smith, Howard & Hull, Boise, Idaho, for defendants Richard Nesbitt and Irvin Stuker.

Samuel Eismann, Coeur d'Alene, Idaho, for defendant Hayes.

Reed Clements, Michael E. McNichols, Clements, Brown & McNichols, Lewiston, Idaho, for remaining defendants.

## MEMORANDUM OPINION AND ORDER

RYAN, District Judge.

### I. FACTS

On February 29, 1980, Gordon Hopper (Hopper) was stopped by Sgt. David Hayes (Hayes) of the Orofino Police Department for driving erratically. Evidently both Hayes and Hopper exited their vehicles. While the facts of this particular incident are unclear, it is alleged that Officer Hayes attempted to arrest Hopper for reckless driving and an argument resulted. When Hayes started back to his patrol car in an apparent effort to call his office, Hopper reentered his pickup and started to drive away. Hayes then turned, knelt, and fired three shots from his service revolver, hitting Hopper once in the back.

Within hours of the shooting, investigators from the Idaho Bureau of Investigation (IBI) were called in to assist in the investigation of the incident. On the following day, March 1, 1980, an officer with the IBI filed a request for the issuance of a search warrant, along with a supporting affidavit. In response to that request, a search warrant was procured from Magistrate Haley of the Second Judicial District of Idaho. Pursuant to that search warrant, blood and urine samples were taken from Hopper.

Following the shooting, Hayes was suspended from active duty on the Orofino police force and subsequently resigned his position approximately six weeks following the incident. Some two weeks after Hayes' resignation, Hopper was charged with violation of Idaho Code § 18–2707 (1979), a felony charge of resisting a police officer. In December 1980, Plaintiff Hopper pled guilty to Idaho Code § 18–705 (1979), a lesser included misdemeanor charge of resisting a police officer.

Out of this factual scenario, Plaintiff Hopper filed a civil complaint against Hayes, the City of Orofino, numerous local officials including the Mayor, the City Council, the Chief of Police, the Sheriff of Clearwater County, all of whom were in office at the time of the incident, and against two investigators of the Idaho Bureau of Investigation. Presently pending before this court are various Motions for Summary Judgment.

### II. ANALYSIS

Plaintiff, in his Complaint, alleges a number of causes of action. Among the many causes listed are specific allegations of constitutional deprivations. The constitutional deprivations alleged include: that resulting from the shooting; the search and seizure of blood and urine samples; assault and battery attendant to the seizure of blood and urine samples; invasion of privacy; defamation; a conspiracy to cover up the facts surrounding the incident and to exonerate the actions of Defendant Hayes; that the City of Orofino and its policy-making officials, which includes all of Defendant Hayes' superiors, established a policy, practice or custom which proximately caused the deprivation; and failure to supervise. Also included in the Complaint appear to be a state tort claims action, and a claim based upon a common law duty to exercise reasonable care in hiring, training, or supervising. After carefully reviewing the memoranda, affidavits, and exhibits on file in this case, and having heard the oral argument of counsel, I am persuaded to grant all the defendants' Motions for Summary Judgment with the exceptions of the City of Orofino and Defendant James Pishl.

#### A. *Defendants Stuker and Nesbitt.*

##### 1. *The conspiracy.*

■ Plaintiff's allegation against Irvin Stuker (Stuker) and Richard Nesbitt (Nesbitt), investigators for the Idaho Bureau of Investigation, centers around their activity in investigating the shooting incident.

While it is unclear precisely what plaintiff is asserting against these two defendants, it appears that plaintiff is alleging that Stuker and Nesbitt were involved in a conspiracy to cover up the facts surrounding the shooting incident and to exonerate Defendant Hayes. Plaintiff originally predicated his allegation of conspiracy on 42 U.S.C. § 1985. Section 1985 does not afford the plaintiff a cause of action because he is unable to allege any racial or class-based discriminatory animus. *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). Once it became clear that Section 1985 was unavailable to plaintiff, he attempted to allege a conspiracy based on 42 U.S.C. § 1983. In order to state a claim for relief under Section 1983, the "[p]laintiff must allege and prove both a conspiracy and an actual deprivation of rights." *Hampton v. Hanrahan*, 600 F.2d 600, 622 (7th Cir.1979). This court is unpersuaded that either element of a Section 1983 conspiracy is present.

■ Plaintiff has made no factual showing that a conspiracy exists. The facts, taken in the light most favorable to the non-moving party, indicate that Plaintiff Hopper was shot by Defendant Hayes in an incident resulting from a routine traffic stop on February 29, 1980. The facts also indicate that Defendant Hayes subsequently resigned and that Plaintiff Hopper pled guilty to a misdemeanor charge of resisting arrest. There is nothing in this record to indicate the existence of a conspiracy. Moreover, even if a conspiracy could be inferred from these facts, plaintiff has failed to allege a cognizable deprivation. *See Landrigan v. City of Warwick*, 628 F.2d 736, 742 (1st Cir.1980).

2. *The search and seizure and the alleged assault and battery.*

The plaintiff also asserts two causes of action against Defendants Stuker and Nesbitt based on illegal search and seizure and assault and battery. The Complaint alleges that the search warrant was obtained without probable cause and that consequently the search constituted an assault and battery. Plaintiff's argument is that the search warrant was issued to further the investigation of the events, and not to investigate an alleged crime on the part of his client.

■ In order to successfully challenge a search warrant, a plaintiff must demonstrate that the affidavit upon which the search warrant is based contains a false statement which was knowingly and intentionally made or a false statement which was made with reckless disregard for the truth. *See Franks v. Delaware*, 438 U.S. 154, 155, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978). In this case there is no evidence before the court which suggests or infers that any statement contained in the supporting affidavit is false. This court does not by its ruling intend to sanction issuance of search warrants for merely investigatory purposes. However, in the case at bar the undisputed facts indicate that the plaintiff was driving erratically and recklessly, and that in issuing a search warrant there was a fair probability that evidence of a crime would be found. *Illinois v. Gates*, —— U.S. ——, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Thus, it is the conclusion of this court that probable cause existed for the issuance of the search warrant and that the circumstances justified the issuance of the warrant.

■ At oral argument, counsel for plaintiff asserted that the search was not in compliance with Idaho Code § 19–625 (1979). Counsel's reliance on Idaho Code § 19–625 is inapposite. The code section referred to deals only with the detention of an individual for purposes of obtaining identifying physical evidence. Thus, that code provision has no bearing on whether or not probable cause existed.

■ Finally, the case of *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) ends the inquiry as to whether or not plaintiff can maintain an action for illegal search and seizure under these facts. While *Schmerber* is a criminal case, the law enunciated is applicable. In *Schmerber*, the Supreme Court found that

the "Fourth Amendment's proper function is to constrain, not against all intrusions as such, but against intrusions which are not justified in the circumstances, or which are made in an improper manner." *Id.* at 768, 86 S.Ct. at 1834. In other words, there are two inquiries before this court insofar as the searches are concerned. The first question is, did the circumstances warrant the intrusion? This question was answered in the affirmative in this court's conclusion that probable cause existed for the issuance of the search warrant. The second question is, was the search conducted in a proper manner? The undisputed evidence before this court indicates that the searches of plaintiff were undertaken by medical personnel in a medical setting. Moreover, the plaintiff was not aware of the occurrences of the searches until after they were concluded. Just as the Supreme Court validated the extraction of blood in *Schmerber* because the "procedure involves virtually no risk, trauma, or pain," *Id.* at 771, 86 S.Ct. at 1836, so too does this court recognize the proper manner of the searches challenged in this case. Thus, there are no questions of material fact remaining regarding the issuance of the search warrant, and summary judgment is appropriate.

■ In connection with plaintiff's allegation of an illegal search, plaintiff asserts that he was subjected to an assault and battery. Since the claim of assault and battery is predicated on the allegation of an illegal search, the analysis of whether or not an assault and battery occurred is similar to that of the claim based on an illegal search. Conceptually, an assault and battery could occur notwithstanding the fact that a valid search warrant had been issued if there is some overreaching in administering the search warrant. Thus, the question of whether an assault and battery occurred is similar to that undertaken in reviewing the search and seizure in asking the question of whether or not it was performed in a proper manner. The undisputed facts in this situation indicate that the blood and urine samples were taken by medical personnel in a hospital setting. Given these facts, it is impossible to discover any overreaching or anything untoward in the actual search and seizure. Moreover, a recent Supreme Court opinion allows this court to grant summary judgment in favor of individuals when that individual's good faith is established. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Consequently, this court finds that there are no remaining genuine questions of material fact with regard to the alleged assault and battery, and as a result, summary judgment is appropriate.

3. *Invasion of privacy and defamation.*

■ The next two claims against Defendants Stuker and Nesbitt are for defamation and invasion of privacy. Both are alleged to be constitutional deprivations. An action for defamation based upon Section 1983 is not cognizable in this court. The United States Supreme Court specifically precluded a litigant from bringing an action in defamation under Section 1983 in *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). What is more, the plaintiff has yet to establish, beyond mere allegations, that any untruths were ever uttered. There is, quite frankly, no evidence whatsoever in the record which indicates the existence of any questions of material fact with regard to this particular allegation.

■ In support of the claim based on invasion of privacy, plaintiff relies on *York v. Story*, 324 F.2d 450 (9th Cir.1963), wherein the United States Court of Appeals for the Ninth Circuit held that Section 1983 afforded a right of recovery under a theory of invasion of privacy. That decision was significantly limited by the United States Supreme Court in *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405. In *Paul*, the plaintiff brought an action in the United States District Court alleging both defamation and invasion of privacy because of his inclusion in a group of photos published jointly by the City of Louisville and Jefferson Coun-

ty, Kentucky, and in which he was listed as an "active shoplifter." In its analysis of the factual situation, the Court rejected the plaintiff's argument that his privacy rights had been breached.

Insofar as the right to privacy claim is asserted, I think that the facts here are analogous to those in *Paul* and are readily distinguishable from the *York* situation. In *York*, a woman went to a police station to report an assault. While at the police station, she was forced, over her objections, to pose nude while a police officer took revealing photographs. In finding a constitutionally protected right, the Ninth Circuit found that their decision was "impelled by elementary self-respect and personal dignity." 324 F.2d 450, 455. In the facts at bar, plaintiff complains that a medical report discussing his physical condition was released by a financial lending agency. Under these facts, this court is persuaded that the situation is more akin to that of *Paul* than that of *York*. Not only is there no showing of deprivation of elementary self-respect, but there is also a policy consideration in favor of enabling the police to conduct bona fide investigations wherein they question and request information from third parties. Thus, this court finds that insofar as the claims of defamation and right of privacy are concerned, there are no material questions of fact remaining, and therefore, summary judgment is appropriate.

### 4. State tort claims.

▮ Finally, there is one colorable claim against Defendants Stuker and Nesbitt remaining. That claim is Count One, which appears to be an allegation under the Idaho Tort Claims Act. Idaho Code §§ 6-901 to 6-928 (1979). The possibility of that claim being asserted against Defendants Stuker and Nesbitt is precluded by the plaintiff's failure to file a timely notice of claim with the State of Idaho as required by Idaho Code § 6-905. *See* Affidavit of Miren E. Artiach at 2.

### B. Defendant City of Orofino.

Plaintiff Hopper asserts a number of causes of action against the City of Orofino. Included among those are Section 1983 conspiracy, constitutional deprivation for an illegal search and seizure, and the attendant assault and battery connected with the search and seizure, constitutional defamation and constitutional invasion of privacy. Because I am of the opinion that those issues have already been addressed in the previous section of this opinion relating to Defendants Stuker and Nesbitt, no further elaboration is necessary. Suffice it to say that plaintiff has failed to carry his burden in response to the arguments presented by the defendants and no genuine issues of material fact exist.

There remain, however, a number of other claims against the City of Orofino. Principal among those are what appears to be a claim based upon the Idaho Tort Claims Act, Idaho Code §§ 6-901 to 6-928, and one predicated on 42 U.S.C. § 1983. Because the City of Orofino is statutorily liable for any acts of Defendant Hayes while he was acting in the course and scope of his employment, and may be liable for a common law duty, it appears that the pendent state claims survive and as such cannot be challenged at this stage. The claim based on 42 U.S.C. § 1983 requires further analysis.

▮ In order to establish municipal liability under Section 1983, "a plaintiff must prove either (a) an official policy or custom which results in constitutional violations or (b) conduct by officials in authority evincing implicit authorization or approval or acquiescence in the unconstitutional conduct." *Popow v. City of Margate*, 476 F.Supp. 1237, 1245 (D.N.J.1979). The appropriate standard in regard to the burden on plaintiff appears to be that where a city's failure to train, supervise, or discipline police officers is negligent, it may fall into one of the previously enunciated standards and serve as the basis for holding a city liable under Section 1983. *See Hirst v. Gertzen*, 676 F.2d 1252, 1263 (9th Cir.1982); and *Popow v. City of Margate*, 476 F.Supp.

1237, 1245. The record as it exists is conflicting on the issue of the adequacy of training and supervision of Defendant Hayes. Plaintiff asserts that there was neither training nor adequate supervision in the use of firearms. Plaintiff also contends that the city's failure to adequately document what training did or did not occur and its failure to document citizen complaints and actions taken as a result thereof are indicia of negligence. Counsel for the city counters that training and supervision did occur and that merely because it is not written down, it is no indication that it did not exist. Given these conflicting positions, there appear to be genuine issues of material fact. Therefore, the city's Motion for Summary Judgment as it relates to the plaintiff's claims under Section 1983 is inappropriate.

C. *Defendants Clay, Crockett, Pettigrew, Calhoun, Burnham, Cochrane, Shepherd, and Albers.*

 There remain motions for summary judgment presented by: Henry Clay, Mayor of Orofino at the time of the incident; Douglas Crockett, Thomas Pettigrew, Suzanne Calhoun, Clark Burnham, James Cochrane, and Douglas Shepherd, members of the Orofino City Council at the time of the incident. These individuals all share the common attribute of some degree of supervision over the Orofino police force. All of these individual defendants have submitted affidavits outlining responsibility and involvement, or lack thereof, in supervision of the Orofino police force. Those affidavits are unrefuted. Because the relationship between Defendant Hayes' action and the City Council and the Mayor are so attenuated, their motions will be granted. Neither the Mayor nor the City Council exercise any ongoing supervisory control of the police force.

A case similar to this on both facts and result is *Delaney v. Dias,* 415 F.Supp. 1351 (D.Mass.1976), wherein a police commissioner's Motion for Summary Judgment was granted because of a lack of any causal link between the nature of the commissioner's responsibility and the activity for which liability was asserted. This decision might well be different if there were any indication of a pattern of failure to supervise the use of excessive force by the Orofino police force. However, that is not the case here. There is no indication of prior use of excessive force by the Orofino police department. The record is devoid of any prior use of a deadly weapon by the Orofino police department in the history of the community. This is an isolated event and, as such, not actionable against either the City Council or Mayor. *See Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976).

Finally, the recent Supreme Court opinion in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), allows this court to grant summary judgment in favor of individuals when that individual's good faith is established. That course is particularly appropriate here because the only suggestion of wrongdoing on the part of these defendants is the allegations in plaintiff's Complaint. *Harlow* teaches that absent tangible evidence, summary judgment is the appropriate course of action. 457 U.S. at 817, 102 S.Ct. at 2738, 73 L.Ed.2d at 410. The affidavits of these defendants were unrefuted by plaintiff. *See* Fed.R.Civ.P. 56(e). Consequently, there is nothing to infer negligence on the part of either the Mayor or the City Council in this case. Consequently, there are no genuine issues of material fact remaining with regard to the Mayor or the City Council of Orofino and summary judgment is appropriate.

D. *Clearwater County Sheriff Albers.*

 Plaintiff also asserts causes of action against the Clearwater County Sheriff, Nick Albers, in his official capacity. The basis for that allegation is the fact that Defendant Hayes was deputized to act as a Deputy Sheriff. Sheriff Albers filed an affidavit in support of his Motion for Summary Judgment establishing the fact that specific authorization was required before Defendant Hayes could be considered as

acting as a Deputy Sheriff.. It is also evident from Defendant Hayes' affidavit that no specific request or authorization had been issued on the day in question or in relation to the incident. Consequently, there are no genuine issues of material fact with regard to the liability of Sheriff Albers and summary judgment is therefore appropriate.

### E. *Chief of Police Pishl.*

██ Finally, Defendant James Pishl, Chief of Police of Orofino, has moved for summary judgment. Defendant Pishl has also filed an affidavit in support of his position. However, viewing the facts in the light most favorable to the non-moving party, it appears that there are still genuine issues of material fact with regard to Chief Pishl's supervision of Defendant Hayes. It is clear that Defendant Pishl was Defendant Hayes' immediate superior and that as Chief of Police, Defendant Pishl was in the best position to supervise and train the members of the Orofino police force. At oral argument, counsel for Defendant Pishl referred this court to *Hays v. Jefferson County, Kentucky,* 668 F.2d 869 (6th Cir.1982). In *Hays,* the Sixth Circuit found that:

> Where, as here, the constitutional violation was not alleged to be part of a pattern of past misconduct, a supervisory official or a municipality may be held liable only where there is essentially a complete failure to train the police force, or training that is so reckless or grossly negligent that future police misconduct is almost inevitable, [citations omitted] or would properly be characterized as substantially certain to result [citations omitted].

*Id.* at 874. That is not the law in this circuit. The law in this circuit was correctly pointed out by counsel for plaintiff as being a standard of negligence. *See Hirst v. Gertzen,* 676 F.2d 1252. Consequently, just as the City of Orofino's Motion for Summary Judgment must be denied, so too must the Defendant Pishl's Motion for Summary Judgment because there remain issues of material fact for the trier of fact to determine.

IT IS THEREFORE ORDERED that the Motions for Summary Judgment of Henry Clay, Douglas Crockett, Thomas Pettigrew, Suzanne Calhoun, Clark Burnham, James Cochrane, Douglas Shepherd, Nick Albers, Irvin Stuker, and Richard Nesbitt should be, and the same are hereby, GRANTED.

IT IS FURTHER ORDERED that the Motions for Summary Judgment of the City of Orofino and Chief of Police James Pishl should be, and the same are hereby, DENIED.

IT IS FURTHER ORDERED that all discovery in this matter shall be completed on or before December 1, 1983.

IT IS FURTHER ORDERED that a jury trial in this matter shall commence February 27, 1984, at the United States Courthouse in Moscow, Idaho, at 1:30 p.m.