923 P.2d 416

Richard YOAKUM and Kathleen
Yoakum, husband and wife,
Plaintiffs–Appellants,

v.

HARTFORD FIRE INSURANCE CO.,
a Connecticut corporation,
Defendant–Respondent.

No. 21838.

Supreme Court of Idaho.
Boise, Feb. 1996 Term.

July 22, 1996.

Rehearing Denied Oct. 1, 1996.

Risch, Goss & Insinger, Boise, for appellants. James E. Risch argued.

Hawley Troxell Ennis & Hawley, Boise, for respondent. Joseph D. McCollum, Jr. argued.

TROUT, Justice.

This is a tort action brought against an insurer, Hartford Fire Insurance Company (Hartford), for its alleged misconduct in in-

vestigating and litigating a wrongful death claim Richard and Kathleen Yoakum (the Yoakums) brought against the insured, City of McCall (McCall).

## I.

### BACKGROUND

On December 6, 1990, the Yoakums filed a wrongful death cause of action against McCall in connection with the death of their minor son. The youth was killed when the golf course maintenance vehicle he was riding in, the property of McCall, tipped over during a turn.

The Chief of Police in McCall initially requested that an officer of the Idaho State Police, Major Thompson (Thompson), perform an accident investigation and reconstruction. Pursuant to his investigation, Thompson filed a report concluding, among other things, that the golf course vehicle was unsafe to operate at any speed. Thompson based this conclusion primarily upon calculations he had performed using various physical parameters including the vehicle's dimensions, a drag factor, and the radius of the turn the vehicle was negotiating when it tipped over. Thompson did not drive the golf course vehicle as part of his investigation, however, as it was still damaged and McCall had not yet determined whether they would repair it.

Subsequent to completing his report Thompson was placed on administrative leave from the Idaho State Police for reasons unrelated to this case and, during that time, he was hired as an expert witness by the law firm of Cantrill, Skinner, Sullivan & King (Cantrill Skinner). Under McCall's contract of insurance, Hartford had retained Cantrill Skinner to undertake McCall's defense. After Thompson was terminated from the Idaho State Police, he travelled to McCall at the request of Hartford to reexamine the vehicle. After Thompson had the opportunity to actually ride in the newly repaired vehicle, he had cause to review his original calculations. Thompson determined that he had included an incorrect figure in a formula he had used to obtain the vehicle's roll-over speed. A new calculation resulted in a determination that the roll-over speed of the vehicle was approximately twenty-two miles per hour, and not the two or three miles per hour he had originally calculated. As a result, Thompson changed his original opinion that the vehicle was unsafe to operate at any speed.

Following the accident, Hartford's claims manager, Phyllis Sanderson (Sanderson), had also been involved in investigating the Yoakums' claim against McCall. Yoakums contend that, in the course of her investigation and despite being advised not to do so, Sanderson attempted to contact the driver of the golf course vehicle at the time of the accident, a minor, without obtaining his mother's consent. The Yoakums also maintain that Sanderson threatened to terminate the driver's insurance coverage and represented to the driver's mother that Mr. Yoakum had told people that he was going to retire on the insurance proceeds from the suit against McCall. After discovering Thompson's change of opinion and Sanderson's activities, the Yoakums accepted Hartford's offer of judgment for $150,000 on January 3, 1992, and a final judgment was then entered.

On August 17, 1992, the Yoakums filed this action against Hartford alleging that the insurer, through its agents, committed wrongful and even criminal acts in its investigation of their wrongful death claim. Included in the Yoakums' claims against Hartford is a 42 U.S.C. § 1983 civil rights cause of action, a racketeering claim, and claims based upon the torts of slander, intentional infliction of emotional distress, outrage, negligence, spoliation of evidence, liability for intended consequences, and intentional harm to a property interest. The Yoakums have also asserted private causes of action for Hartford's alleged violation of various criminal statutes relating to the use of Thompson as a paid expert witness.

The district court granted Hartford's motion to dismiss, dismissing most of the Yoakums' claims pertaining to Hartford's alleged violations of the penal statutes including a claim for obstruction of justice. The Yoakums afterward amended their complaint and the court subsequently granted Hartford's motion for summary judgment on the

remainder of the Yoakums' claims. In its order granting summary judgment, the district court relied on several grounds: that there could be no bad faith cause of action against an insurer by a third party; that the Yoakums' claims are barred by the judgment entered in the underlying wrongful death action; that without a showing of special damages the slander cause of action had no merit; and that the torts of intentional infliction of emotional distress and outrage require the plaintiffs to show physical manifestation of distress or subjective testimony, neither of which were evidenced in the record. The Yoakums now appeal from both decisions rendered in Hartford's favor.

## II.

### STANDARD OF REVIEW

This appeal requires us to review both the district court's ruling to dismiss certain causes of action under I.R.C.P. 12(b)(6) and its subsequent order granting Hartford's motion for summary judgment under I.R.C.P. 56(c). When reviewing an order dismissing a cause of action pursuant to I.R.C.P. 12(b)(6), the non-moving party is entitled to have all inferences from the record viewed in its favor. *Orthman v. Idaho Power Co.*, 126 Idaho 960, 962, 895 P.2d 561, 563 (1995) (citing *Miles v. Idaho Power Co.*, 116 Idaho 635, 637, 778 P.2d 757, 759 (1989)). After drawing all inferences in the non-moving party's favor, we must then ask whether a claim for relief has been stated. *Id.*

When reviewing an order granting summary judgment, however, we must determine whether " 'the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Curtis v. Firth*, 123 Idaho 598, 609, 850 P.2d 749, 760 (1993) (quoting I.R.C.P. 56(c)). We must liberally construe the record in a light most favorable to the party opposing the motion, drawing all inferences and conclusions in that party's favor, and if reasonable people could reach different conclusions or draw conflicting inferences, then an order granting summary judgment

must be reversed. *Friel v. Boise City Hous. Auth.*, 126 Idaho 484, 485, 887 P.2d 29, 30 (1994). If, however, the evidence reveals no genuine issue as to any material fact, then all that remains is a question of law over which this Court exercises free review. *Id.*

In this case, the district court granted Hartford's motion to dismiss the Yoakums' causes of action for Hartford's alleged violation of certain penal statutes. The court later granted Hartford's motion for summary judgment on the Yoakums' remaining claims. Although our standards for reviewing the district court's dismissal of certain of the Yoakums' claims and the court's granting of summary judgment to Hartford on the remainder are similar, there are important differences. On a motion for summary judgment, the burden is always upon the moving party to prove the absence of a genuine issue of material fact. *Petricevich v. Salmon River Canal Co.*, 92 Idaho 865, 869, 452 P.2d 362, 365 (1969) (citations omitted). If, however, the basis for a properly supported motion is that no genuine issue of material fact exists with regard to an element of the non-moving party's case, it is incumbent upon the non-moving party to establish an issue of fact regarding that element. *Farm Credit Bank of Spokane v. Stevenson*, 125 Idaho 270, 272–73, 869 P.2d 1365, 1367–68 (1994). No similar burden on the non-moving party exists, however, when a motion to dismiss under I.R.C.P. 12(b)(6) is considered. A motion to dismiss under I.R.C.P. 12(b)(6) will not be granted, or upheld by this Court, unless the non-moving party would be unable to prove any conceivable set of facts in support of its claim. *Orthman*, 126 Idaho at 962, 895 P.2d at 563.

## III.

### PRIVATE CAUSE OF ACTION FOR VIOLATION OF CRIMINAL STATUTES

The Yoakums argue that Hartford's alleged obstruction of justice, I.C. § 18–705, and violations of the Idaho Bribery and Corrupt Influences Act, I.C. §§ 18–1351 to –1362, should provide them with a private cause of action. In *White v. Unigard Mut.*

*Ins. Co.,* 112 Idaho 94, 730 P.2d 1014 (1986), we analyzed whether a private right of action against an insurer exists under the Unfair Claims Settlement Practices Act. 112 Idaho at 100–01, 730 P.2d at 1020–21. Recognizing that in certain cases statutory law establishes rights, defines wrongs and implies remedies, we quoted the Restatement (Second) of Torts § 874A which provides:

> When a legislative provision protects a class of persons by proscribing or requiring certain conduct but does not provide a civil remedy for the violation, the court may, if it determines that the remedy is appropriate in furtherance of the purpose of the legislation and *needed to assure the effectiveness of the provision,* accord to an injured member of the class a right of action, using a suitable existing tort action or a new cause of action analogous to an existing tort action.

*Id.* (emphasis in original). We noted in *White* that the absence of an express civil remedy under the Unfair Claims Settlement Practices Act was not automatically fatal to the plaintiff's tort action, although we held there that an implied private right of action did not exist under that particular statute. *Id.* at 101, 730 P.2d at 1021.

In this case, the criminal statutes Hartford allegedly violated satisfy none of the criteria set forth in *White* that would militate in favor of implying a private right of action in favor of the Yoakums. The criminal statutes involved are clearly not designed to protect any special class of persons but are instead intended to protect the general public from those who would corrupt a public officer. More importantly, there is absolutely no indication that the legislature intended to create a private cause of action through the enactment of these statutes and in determining whether a statute impliedly authorizes a private cause of action, the focus of our inquiry is whether the legislature intended to create such a private remedy. *Touche Ross & Co. v. Redington,* 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979). In the absence of strong indicia of a contrary legislative intent, courts must conclude that the legislature provided precisely the remedies it considered appropriate. *Middlesex County*

*Sewerage Auth. v. National Sea Clammers,* 453 U.S. 1, 15, 101 S.Ct. 2615, 2623, 69 L.Ed.2d 435 (1981). As criminal offenses under Title 18, the Idaho legislature has specifically provided punishment for Hartford's alleged obstruction of justice and violations of the Idaho Bribery and Corrupt Influences Act, *see* I.C. §§ 18–112, –113; there is no indication that providing an additional civil remedy is necessary to assure the effectiveness of these statutes. Otherwise, courts must conclude " 'that the legislature intended to enact a civil code companion to the criminal code.' " *Cort v. Ash,* 422 U.S. 66, 79, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975) (quoting *Ash v. Cort,* 496 F.2d 416, 428–29 (3d Cir.1974) (Aldisert, J., dissenting), *rev'd,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975)).

For these reasons, a private right of action for Hartford's alleged criminal violations is not available and the district court's dismissal of these claims is affirmed.

## IV.

### EFFECT OF PRIOR JUDGMENT

The Yoakums argue that the district court erred in granting summary judgment in favor of Hartford on their claims of a section 1983 deprivation of their civil rights, racketeering, and for the torts of spoliation of evidence, liability for intended consequences, and intentional harm to a property interest. The event at the heart of these claims is the successful attempt by Cantrill Skinner to contact Thompson and utilize him as an expert witness. As indicated previously, after Thompson's reexamination of the golf cart, he discovered that he had made a mathematical error when he originally calculated the vehicle's roll-over speed. After correcting his calculations and recomputing the formula, he substantially changed his opinion and concluded that the golf course vehicle was safe at speed.

The district court found that all of these causes of action amounted to nothing more than a claim of bad faith by a third party against an insurer which is not actionable in Idaho. Further, the district court concluded that any claims about Hartford's misconduct in the wrongful death action

should have been asserted in *Yoakum v. City of McCall,* # CV 90–244 (Valley County, Idaho), and could now be asserted in that action by a motion for relief from judgment pursuant to I.R.C.P. 60(b). In so concluding, the district court erred.

Relief from judgment under Rule 60(b)(3), based upon fraud, misrepresentation, or other misconduct of an adverse party, would have been unavailable to the Yoakums in the wrongful death suit since the alleged misconduct of Hartford in hiring Thompson was known well before the offer of judgment was made and the judgment entered. *See Compton v. Compton,* 101 Idaho 328, 334–35, 612 P.2d 1175, 1181–82 (1980). Further, the claims asserted now by Yoakums against Hartford are not barred by the claim preclusive effects of *res judicata.*

Under the principle of *res judicata,* or claim preclusion, a judgment on the merits in a prior proceeding generally bars relitigation between the same parties or their privies on the same cause of action. *Foster v. City of St. Anthony,* 122 Idaho 883, 888, 841 P.2d 413, 418 (1992) (quoting *Andre v. Morrow,* 106 Idaho 455, 680 P.2d 1355 (1984)). Although the claims asserted by the Yoakums against Hartford in this action are not the same as those involved in the wrongful death suit that particular difference, in itself, would not prevent claim preclusion since *res judicata* also prohibits litigation of matters "which might and should have been litigated in the first suit." *Diamond v. Farmers Group, Inc.,* 119 Idaho 146, 148–51, 804 P.2d 319, 321–24 (1990) (quoting *Joyce v. Murphy Land & Irrigation Co.,* 35 Idaho 549, 208 P. 241 (1922)). The claims which Yoakums now assert against Hartford are separate and independent causes of action arising out of Hartford's activities and are irrelevant to the negligence action asserted against McCall. Thus these are not claims which "might and should have been litigated in the first suit," and *res judicata* is not a bar.

■ The district court also determined that the bulk of the Yoakums' claims could be distilled into a single claim of bad faith against an insurance company. Since third parties are precluded in this state from bringing a bad faith claim against an insur-

ance company, *Hettwer v. Farmers Ins. Co. of Idaho,* 118 Idaho 373, 797 P.2d 81 (1990), the district court concluded that the Yoakums' claims must fail. A review of Yoakums' claims, however, supports Yoakums' assertion that these causes of action for violation of civil rights, racketeering, spoliation of evidence, liability for intended consequences and intentional harm to a property interest relate directly to Hartford's allegedly tortious actions against Yoakums, irrespective of any insurance policy. Thus these claims are more properly characterized as separate and independent torts against Hartford, rather than as third party bad faith claims, and therefore we will analyze the merits of each.

The Yoakums' first allegation is that Hartford conspired with Thompson, a public official, to deprive the Yoakums of their civil rights in violation of 42 U.S.C. § 1983. Although the record clearly indicates that Hartford hired Thompson to reexamine the vehicle, there is absolutely no evidence in the record of any conspiracy between them to falsify Thompson's report in order to minimize McCall's fault for the accident or to violate any of the criminal bribery statutes as alleged by Yoakums; nor have the Yoakums presented evidence of any cognizable deprivation of their civil rights to support such a claim. *See Hopper v. Hayes,* 573 F.Supp. 1368, 1371 (D.Idaho 1983). Furthermore, it appears that, at least from the time Thompson performed his second investigation, he was no longer employed by the State of Idaho and was therefore not a state actor for the purposes of invoking section 1983.

■ The Yoakums' cause of action for Hartford's alleged pattern of racketeering activity must also fail since the Yoakums' racketeering claim apparently is predicated completely upon Hartford's single action of employing Thompson in violation of the bribery and corrupt influences statutes and, hence, does not satisfy the statutory requirement that a "pattern of racketeering activity" must involve "at least two (2) incidents." I.C. § 18–7803.

■ The Yoakums' next claim is for spoliation of evidence, a tort we have previously discussed but have not expressly adopted.

*Murray v. Farmers Ins. Co.,* 118 Idaho 224, 229, 796 P.2d 101, 106 (1990) (citing *Smith v. Superior,* 151 Cal.App.3d 491, 198 Cal.Rptr. 829 (1984); *Hazen v. Anchorage,* 718 P.2d 456 (Alaska 1986)). "Assuming *arguendo* that ... spoliation of evidence is part of the law of Idaho," *Murray, id.,* it is clear, however, that an essential element of that tort is not present here. Any person who willfully "destroys or conceals" evidence is liable for the tort of intentional spoliation of evidence. *Smith,* 198 Cal.Rptr. at 833. In *Smith,* the plaintiffs sought compensation for the intentional destruction of important evidence that was to be used in future litigation. *Id.* at 835. In contrast, the Yoakums have not demonstrated that Hartford destroyed any evidence which would justify holding the insurer liable for this tort. As an expert witness, Thompson's opinion as to the vehicle's role in the accident is not evidence that the jury is bound to accept and, in fact, the jury may totally reject his views on causation for any reason. *See* IDJI 124. The golf cart itself, upon which Thompson's opinion was based, had not been tampered with and could easily have been examined by another expert hired by the Yoakums who could have proffered his opinion for the jury's consideration. In addition, Thompson's original investigation report finding that the vehicle was unsafe to operate at any speed was also still intact and readily available for use by the Yoakums for any purpose, including impeachment of Thompson, at the wrongful death trial. Hartford's hiring of Thompson to conduct a subsequent investigation and file a new report, although it certainly devalued Thompson's original report, does not create the type of destruction or concealment of evidence which this tort requires.

▪ The Yoakums have also sought to hold Hartford liable for torts not heretofore recognized in this state, *i.e.* liability for intended consequences and intentional harm to a property interest, based upon the Restatement (Second) of Torts §§ 870, 871 (1979). We note, however, that the Restatement has set forth these two sections, not to define specific causes of action labeled as such, but as mere guidelines for a court to use in fashioning the contours of new intentional torts a court may wish to create. *Id.* We

therefore find no cogent reason to convert these "unifying principles" into actionable torts for the purposes of this lawsuit.

Based upon the foregoing, we find no basis for any assertion of liability against Hartford under the circumstances presented by this case; however, for guidance in future litigation we take this opportunity to opine on a possible cause of action for conduct more egregious than that presented here. The guidelines offered by the authors of the Restatement and the cases which have defined the intentional spoliation of evidence cause of action provide a framework for another cause of action based upon intentional conduct that unreasonably interferes with a party's prospective cause of action. The tort of intentional spoliation of evidence has been alternatively identified by courts as the "intentional interference with prospective civil action by spoliation of evidence." *Hazen,* 718 P.2d at 463. The court in *Smith* described this tort as "closely analogous" to the intentional interference with a prospective business advantage, a tort which has been recognized in this state. *Idaho First National Bank v. Bliss Valley Foods,* 121 Idaho 266, 284–87, 824 P.2d 841, 859–62 (1991).

▪ As we discussed in *Bliss Valley Foods,* in order to recover for the tort of intentional interference with a prospective economic advantage, a plaintiff must establish that the intentional interference by the defendant resulting in injury was wrongful. This may be shown by proof that either: (1) the defendant had an improper motive to harm the plaintiff; or (2) the defendant used a wrongful means to cause injury to the prospective advantage. *Id.* at 286, 824 P.2d at 861. To be actionable, the means used to cause injury must be wrongful by reason of a statute, regulation, recognized common law rule, or an established standard of a trade or profession. *Downey Clinic v. Nampa Restaurant Corp.,* 127 Idaho 283, 286, 900 P.2d 191, 194 (1995) (citing *Top Serv. Body Shop, Inc. v. Allstate,* 283 Or. 201, 582 P.2d 1365, 1371 (1978)). What may be wrongful for an unprivileged defendant in a given situation, however, may not be so when the defendant is acting under a recognized privilege. *Bliss*

*Valley Foods,* 121 Idaho at 286, 824 P.2d at 861.

In this case Hartford was acting to minimize McCall's liability, and therefore its own exposure to substantial damages therefrom, by hiring Thompson to reinvestigate the vehicle and the accident. That is clearly not an improper motive and the only question is whether, given Hartford's position as McCall's insurer, the means used to devalue the Yoakums' claims was wrongful. Although not confined solely to the spoliation of evidence, a claim for intentional interference with a prospective civil action must nonetheless allege and prove conduct that amounts to an "unreasonable interference" by the defendant, taking into account any recognized privileges that party might hold. *See, e.g., Hazen,* 718 P.2d at 464. Although even a defendant's recognized privilege may be overcome when the means used is not justified, *Top Serv. Body Shop,* 582 P.2d at 1371, the record before us does not reveal that Hartford's conduct amounted to an "unreasonable interference" with the Yoakums' claims in the underlying wrongful death action.

As we discussed earlier, neither Hartford nor Thompson destroyed any evidence and Hartford's mere hiring of Thompson to reexamine the accident vehicle, without more, is insufficient to impose liability. In addition, although we are disturbed by Sanderson's alleged misconduct in investigating the Yoakums' claims we again find that the claims adjuster's actions are not sufficiently egregious to amount to an unreasonable interference with the Yoakums' claims. For these reasons, and although we clearly do not condone Hartford's actions in this case, we cannot conclude that they amounted to an unreasonable interference with the Yoakums' civil action, especially considering Hartford's role as McCall's insurer and the party ultimately responsible for paying whatever damages a jury might find McCall ultimately liable for in the wrongful death action. Thus, even if we were to apply such a cause of action to the facts of this case, Yoakums would still not be able to withstand summary judgment.

## V.

## OTHER TORT CAUSES OF ACTION

The Yoakums also allege that Hartford was negligent. Since Hartford's actions were clearly intentional in hiring Thompson to reinvestigate the accident and adjusting the claim, and designed to produce exactly the result the Yoakums are complaining of, it is difficult for us to envision how Hartford's actions can also be considered negligent. This suffices to dispose of this allegation, without further analysis of whether there even exists a duty under these circumstances between Hartford and the Yoakums.

The Yoakums have also requested this Court to find that the district court erred in concluding that the tort of "outrage" is the same cause of action as "intentional infliction of emotional distress" for which the court granted Hartford's motion for summary judgment. In *Brown v. Matthews Mortuary, Inc.,* 118 Idaho 830, 833–34, 801 P.2d 37, 40–41 (1990), we briefly outlined the development of the tort of outrage but declined to adopt this tort under the facts of that particular case. We nevertheless provided a definition of the tort of outrage noting that liability is generally based on conduct " 'exceeding all bounds usually tolerated by decent society, and of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind.' " *Id.* at 832, 801 P.2d at 41. This is strikingly similar to the definition we have given for the tort of intentional infliction of emotional distress involving conduct that is "extreme and outrageous which either intentionally or recklessly causes severe emotional distress." *Id.* (citations omitted).

As the district court concluded, it appears that the torts of intentional infliction of emotional distress and outrage are identical or at least involve very similar elements. The Yoakums have not articulated any cogent reason for us to find in this case that these two torts should be distinguished and we affirm the district court's conclusion that these causes of action, at least for the purposes of this case, are identical.

The Yoakums also allege that Hartford, through its claims manager, made various derogatory statements about the claimants during the course of investigation the accident that were defamatory. Defamatory utterances are actionable without allegation and proof of special damages if they fall within one of four categories. *Barlow v. International Harvester Co.,* 95 Idaho 881, 890, 522 P.2d 1102, 1111 (1974). As the Court in *Barlow* pointed out, these categories are set forth in the Restatement (Second) of Torts and involve statements which impute to the plaintiff either a criminal offense, a loathsome disease, a matter incompatible with his trade, business, profession, or office, or serious sexual misconduct. *Id.* (citing Restatement (Second) of Torts §§ 570–574 (1977)). If an alleged defamatory statement does not fall within one of these categories, a plaintiff must allege and prove that some special harm resulted from the utterance. *Barlow,* 95 Idaho at 890, 522 P.2d at 1111.

In this case, the Yoakums allege that Hartford's claims manager told the vehicle driver's mother of Mr. Yoakum's supposed comment to several people that he was going to retire on the proceeds of his wrongful death claim against McCall. Although this alleged statement may be defamatory, it does not fall within one of the four categories of slanderous utterances which would make the allegation and proof of special damages unnecessary. The Yoakums have failed to allege or prove any special harm resulting from this alleged utterance and, thus, we affirm the district court's granting of Hartford's motion for summary judgment on the slander cause of action.

## VI.

### ATTORNEY FEES

Hartford asserts entitlement to its attorney fees on this appeal pursuant to I.C. § 12–121 and I.A.R. 41. Attorney fees will only be awarded to the prevailing party on appeal if the Court determines that the action was brought or pursued frivolously, unreasonably or without foundation. *Minich v. Gem State Developers, Inc.,* 99 Idaho 911, 918, 591 P.2d 1078, 1085 (1979) (citing I.R.C.P. 54(e)(1)). In this case, it appears that the Yoakums' claims were not brought or pursued frivolously so as to warrant the imposition of attorney fees. The Yoakums' arguments, although ultimately not persuasive, were sufficient to disallow an attorney fee award under I.C. § 12–121.

## VII.

### CONCLUSION

We affirm the district court's dismissal, under I.R.P.C. 12(b)(6), of the Yoakums' claims pertaining to Hartford's alleged violations of the Idaho Bribery and Corrupt Influences Act and obstruction of justice and we also affirm the district court's granting of Hartford's motion for summary judgment. When an order of the district court is correct but is grounded upon an erroneous theory, we may affirm the court's order based upon the correct theory. *Andre,* 106 Idaho at 459, 680 P.2d at 1359 (citations omitted). Although we disagree with the district court that some of the Yoakums' claims are barred by the judgment in *Yoakum v. City of McCall,* # CV 90–244 (Valley County, Idaho), we affirm the district court's order granting Hartford's motion for summary judgment for the reasons enunciated in this opinion.

McDEVITT, C.J., JOHNSON, J., and WOOD, J. Pro Tem., concur.

SCHROEDER, Justice, dissenting.

The development of the common law through the courts when new situations arise that require resolution in order to achieve justice is essential. Ours is not a static system locked in place to those theories which judges in the past have said deserve recognition. The evolution of the law occurs when a compelling need arises and our sense of justice speaks. This is the traditional role of the courts and is not a usurpation of the authority of the legislature or the unauthorized creation of law.

This case alerts us to a potential evil that may corrupt the process of justice and defeat the rights of individuals to pursue whatever remedies they might have without money dictating the result. The Court's opinion

sets forth the Yoakums' allegations that call into question Hartford's willingness to litigate within the rules of fair play. As a predicate to the more serious claim, the Yoakums allege that the Hartford claims manager attempted to contact the driver of the golf course vehicle, who was a minor, without obtaining his mother's consent, despite being advised not to do so by the minor's mother. Further, the Yoakums allege that the claims manager attempted to manipulate the minor driver's testimony by intimidation, threat and coercion by suggesting to his mother that "they had better have good insurance" and attempting to prevent him from talking truthfully with persons with whom he wished. They also allege that the claims manager told the driver's mother that Mr. Yoakum had told people he was going to retire on the insurance proceeds from the suit against McCall. These are not actionable events by themselves, but if proved they establish the state of mind and a course of improper conduct on the part of the Hartford representatives in pursuing this case. They are relevant to the event in this case that should be actionable. That is, the allegation that Hartford bought off a neutral witness. These facts are not proved at this stage of the case, but they are allegations which should be taken as true in determining a motion for summary judgment.

Simply stated, a state police officer performed an accident investigation and reconstruction acting in his official capacity. He concluded that the golf course vehicle was unsafe to operate at any speed, basing this conclusion upon calculations he performed. This neutral witness was subsequently hired by Hartford as an expert witness. He performed additional tests and calculations and changed his original opinion. Perhaps his second opinion, which he was paid to render, was correct and his first opinion, formed as a part of his official duties, was incorrect. What the truth is cannot be determined at the summary judgment stage. Only the full discovery and trial process would tell this. However, for purposes of summary judgment it is reasonable to draw the inference that Hartford obtained repudiation of the initial opinion by the payment of money. If proved, this corrupts the process. Even if an im-proper motive is not proved, the practice brings the justice system into disrepute.

In analyzing the Yoakums' claim on a theory of spoliation the court makes determinations that are questionable: 1) the change of opinion following the hiring of Thompson does not create the type of destruction or concealment of evidence which the tort of spoliation requires; 2) Hartford's actions to minimize McCall's liability by hiring Thompson to reinvestigate the vehicle in the accident was not an improper motive, was not unreasonable interference with the plaintiff's case, and the "mere hiring of Thompson to re-examine the accident vehicle, without more, is insufficient to impose liability." There are several problems with this analysis.

Reading the evidence in the light most favorable to the Yoakums, as should be done, a jury could determine that Hartford bought off a witness. That is an improper motive. The conclusion that no evidence was destroyed is too limited. Again, reading the evidence in the light most favorable to the Yoakums, Hartford destroyed the opinion of what might have been the Yoakums most favorable witness. Among the definitions of "destroy" appearing in Webster's II, New Riverside University Dictionary, are the following: "To ruin completely: SPOIL;" and "To render useless or ineffective <*destroyed* the witness for the prosecution>." The facts alleged in this case clearly meet those standards. The effect of altering witness testimony by the payment of money, if proved, is as corrosive of the process as burning an exhibit.

The Court notes that the original investigative report, which concluded that the vehicle was unsafe to operate at any speed, was available to the Yoakums and could have been utilized by them in the wrongful death trial. That is true but misses the reality of legal life. It is unlikely the plaintiffs would put on a witness who would recant his opinion in their case in chief. That smacks of legal self-destruction. The plaintiff's ability to hire their own expert at this point is compromised. The idea that the plaintiff's situation is solved by cross-examination in

the defendant's case, if the plaintiffs could make a *prima facie* case without the expert testimony, is equally doubtful. Weighing the evidence in favor of the Yoakums, as it should be weighed, the conclusion is that the best piece of evidence they had was destroyed (spoiled) by Hartford paying the witness for a different opinion. That is neither legitimate minimization of McCall's liability nor harmless. Looking the other way on the conduct alleged in this case invites the legal process into the realm of street fights instead of the pursuit of justice in an orderly, fair process.

The Court's opinion does not recognize or reject the tort of spoliation of evidence, but concludes that even if the tort were recognized this case would not meet the standards to state a claim. The title of the cause of action is not important. If termed spoliation, this case states a cause of action for intentional destruction of evidence. Under whatever title, there should be a recognized cause of action for intentionally depriving a party of the value of a cause of action by improper means. There are sufficient facts shown in this record to allow a case upon that theory to go forward. It should do so.